EMIGRANT INDUSTRIAL SAVINGS BANK, Respondent, *v.* WILLOW BUILDERS, INC., Appellant, et al., Defendants.

Argued January 7, 1943; decided March 11, 1943.

134

*Meyer Levy* and *Solomon Ginsberg* for appellant.

*John E. McAniff, Lester T. O'Connor* and *Joseph H. Praetz,* for  respondent.

LEHMAN, Ch. J. On May 2, 1941, the defendant Willow Builders, Inc., entered into a contract to purchase from the plaintiff an eleven-story apartment house. The stipulated purchase price was $275,000, payable as follows: four thousand dollars upon the execution of the contract, sixteen thousand dollars upon the closing of title and two hundred and fifty-five thousand dollars by delivery of a Purchase Money Bond and Mortgage. In the contract of sale the defendant agreed that it would " make extensive alterations to the premises." The total cost of the alterations was estimated in the contract of sale at $228,300, and the plaintiff agreed to make a building loan of $167,500 in eight installments. Each installment was to be paid upon the completion of specified items of the alteration work. On May 19th title was closed. The purchase money bond and mortgage and the building loan agreement and mortgage were executed and delivered in accordance with the contract of purchase and sale.

Work on the alterations which the defendant agreed to make was started between May 20th and May 28th and, in accordance with the terms of the agreement between the plaintiff and the defendant, the progress of the work was observed and noted by representatives of the plaintiff's architects who visited the premises several times each week. On July 10th with the approval of the architects the plaintiff advanced to the defendant the sum of $27,500, as the first installment of the building loan, and on August 13th advanced the sum of $28,000 as the second installment. On September 13, 1941, the plaintiff took possession of the building, claiming that it had a right to do so because the defendant had failed to proceed with the alterations as stipulated in the contract of sale and the building loan agreement. On September 15th it began this action to foreclose the purchase money mortgage and the building loan mortgage.

The contract of sale provided among other things: " If work on the said alterations shall not be promptly started, or shall for any period of fifteen (15) days cease, or not be prosecuted with reasonable diligence, or not be fully completed and paid for on or before October 1, 1941, (strikes, lockouts, acts of God or the public enemy or circumstances beyond the control of the purchaser excepted), or if the purchaser fails to comply

with any agreements on its part contained herein, or in said building loan agreement, purchase money mortgage or building loan mortgage, the whole of the principal sum due on said existing purchase money mortgage, with interest if any, thereon, held by the seller, and on the building loan mortgage of $167,500.00 herein referred to, to the extent of the advances, if any, then made thereon, with interest, if any, thereon, shall become immediately due and payable at the option of the seller.''

The building loan agreement provided among other things:

'' 7th: Whenever and as often as any of the following events occur before the amount of said loan is fully advanced, all obligations on the part of the lender or the holder of said mortgage to make or procure any further advances shall cease, if the lender so elect, and the said mortgage debt shall become due and payable at the option of the lender or of the holder of the mortgage, anything therein or in said bond contained to the contrary notwithstanding:

\* \* \* \* \*

'' (i) If the borrower should not proceed continuously with the alterations to the building (stoppage by reason of actual strikes, lockouts, acts of God or the public enemy or circumstances beyond the control of the borrower excepted).

\* \* \* \* \*

'' (n) If the borrower should assign this contract or any interest therein, or any right to receive any payment or portion of a payment herein provided for, or give or issue an order on the lender or holder of the mortgage for the payment of any money payable under this agreement.''

The amended complaint in the foreclosure action alleges that the defendant Willow Builders, Inc. has failed to comply with the provision of the *contract of purchase and sale* quoted above '' in that the said defendant did not prosecute with reasonable diligence the work on said alterations.'' It alleges also that the defendant violated the provisions of the contract of purchase and sale '' in that the defendant has failed to comply with the terms of the covenants contained in the Building Loan Agreement '' as set forth above by assigning on August 7, 1941 to Haviland Construction Corporation the sum of $5762.84 out of the moneys to be paid to Willow Builders, Inc. as a third pay-

ment pursuant to the terms of said building loan agreement and by assigning on August 27th to World Steel Products Company the sum of $1,985. out of the moneys to become due under the Building Loan Agreement. Upon these grounds the plaintiff seeks to foreclose the purchase money mortgage. It seeks to foreclose the building loan mortgage on the same grounds and also on the ground that the defendant did not proceed continuously with the alterations to the building. Upon the trial of the foreclosure action the trial judge found that the defendant had been remiss in many respects and that the plaintiff had established each default set forth in the complaint as a ground of foreclosure. The judgment of foreclosure entered upon that decision was approved in the Appellate Division by a divided court, two justices dissenting and voting to dismiss the complaint.

The defendant does not challenge upon this appeal the right of the plaintiff to foreclose the purchase money mortgage for a default which under the contract of sale would constitute ground for foreclosure even though the purchase money mortgage contains no similar provisions. (See *Metropolitan Life Ins. Co.* v. *Hall*, 56 Hun, 647.) We assume without further consideration that the plaintiff is entitled to foreclose both mortgages upon proof of any default alleged in the complaint unless the defendant shows that the plaintiff has " waived " such default as a ground for foreclosure. Since the trial judge has made findings in favor of the plaintiff upon every issue we must upon this appeal reject the evidence produced by the defendant except in so far as the truth of the defendant's evidence is not challenged.

The defendant employed subcontractors in making the alterations. While the work was in progress a strike which lasted from July 29th to August 11th, 1941, occurred in the " electrical industry " in the city of New York. Concededly nothing done or omitted by the defendant or any subcontractor caused this strike but, as the trial judge found, this strike " did not prevent the subcontractors . . . other than Radiant Electric Construction Company from continuing their work " and the strike did not cause any substantial delay. A second strike which was called on August 14, 1941, and lasted until September 11th or 12th, 1941, was a strike, as the trial judge

found, " in substantially all the trades employed in the altera-
tion work." It was settled by an agreement by Willow
Builders, Inc., to use only union labor upon the alterations.
During the second strike work on the alterations was almost
halted. The entry of the plaintiff upon the premises on Sep-
tember 13, 1941, immediately after the strike was terminated,
made resumption of work by the defendant impossible.
Undoubtedly the defendant would not have completed the
work till long after October 1st even if the work had pro-
ceeded with all possible speed after the strike was terminated.
Under the terms of the agreements between the plaintiff and
the defendant, the plaintiff had the right to enter upon the
premises if the delay was due to negligence or wrong of
the defendant. The plaintiff had no right to enter if the delay
was due solely to the strike.

There is no evidence in the record that until the second
strike the plaintiff or representatives of the architects who were
supervising the work for the plaintiff made any complaint that
the work was not proceeding continuously and with sufficient
diligence or that unskilled or insufficient labor was employed
upon it. On the contrary the evidence produced by the plain-
tiff indicates that until the strike began the architects were
satisfied with the progress of the work. It is true that the
plaintiff produced evidence that when the strike caused a
stoppage in the work, only 40% of the work had been done,
and that even if there had been no strike, the work would not
have been finished by October first, but the plaintiff made no
attempt to show that the defendant could by greater diligence
have proceeded with more speed. Accepting, as we must,
the finding that only 40% of the alteration work had been done
when more than half the time allowed for the performance
of the entire work had passed, no inference that failure to
proceed with the work more rapidly was due to fault of the
defendant could be drawn from that fact alone. The delay
and stoppage of the work after the strike was called would,
however, constitute a breach of the contract of sale and of
the building loan agreement, unless it appears that no fault
of the defendant caused the strike or produced the delay.
That is the primary problem presented upon this appeal.

We must start consideration of that problem with the undisputed fact that so long as the strike continued, substantial progress in the work was impossible. There was dispute as to the cause of that strike. The defendant produced evidence to show that the Building Trades Council called the strike arbitrarily. The trial court has found, however, that the second strike " was caused by defendant, Willow Builders, Inc., and its sub-contractors, particularly F. Pannerelli, in employing non-union labor." The defendant knew that some of its sub-contractors would not employ union labor. Indeed, it told one of them, in effect, that it had no objection, and from the evidence presented at the trial, an inference may fairly be drawn that the defendant's failure to insist upon employment of union labor may have been due to a desire to keep down the cost of the work. The strike was, as we have said, ultimately settled by an agreement that only union labor should be used, and we may assume that the strike could have been avoided, or could have been terminated promptly, if the defendant had made such an agreement earlier. The plaintiff urges that the defendant's choice of subcontractors who used non-union labor was negligent and reasonably calculated to cause a strike, and was the primary cause of the delay in the work.

Closed shop agreements made in manner authorized by the Labor Law are lawful in this State, and this court has in many cases sustained the right of labor unions to strike and picket in order to constrain employers to make such closed shop agreements. To avoid the possibility of a strike caused by non-union labor, the plaintiff could have demanded if it had chosen to do so, that the defendant should stipulate in its contract that only union labor should be employed. It did not choose to do so, but upon this appeal it asks in effect that the court·should read into the contract an implied stipulation that the defendant was bound to employ union labor, at least if a strike could be avoided only by such means.

The clause in the contract between the plaintiff and the defendant exonerating the defendant contractor from responsibility for the result of " stoppage by reason of actual strikes " must be given reasonable construction. It should not be read as intended to exonerate the contractor from responsibility for the result of its own wrong. If a contractor willfully causes

a strike, or if a strike is due to failure of the contractor to carry on the work in manner stipulated by the contract, the stoppage is properly chargeable to the fault of the contractor, and the contractor may be held responsible for his fault. We find no basis, however, in this record for any inference that the employment of non-union labor violated any obligation which the defendant assumed either expressly or impliedly. The law of this State accords to an employer the same right to resist pressure to agree to employ only union labor as it accords to a union or to a group of employees to exert such pressure. The defendant has apparently conceded in its brief and oral argument that where a trade or industry is so completely organized by unions that any attempt to employ non-union labor must result in immediate stoppage of the work by a strike, any attempt to employ non-union labor would be in itself an invitation to strike, and the consequent delay should be chargeable to the contractor. It challenges the plaintiff to show that employment of non-union labor in *alteration work* would in itself constitute a call or invitation to building trades unions to strike.

Upon this appeal we need not consider whether the defendant's concession is sound in law. It seems clear to us that even with that concession, the record is barren of any evidence which shows that by permitting the employment of non-union labor the defendant violated his obligation to proceed with the work continuously and with diligence. Undoubtedly there are building contractors in the city of New York who do alteration work without employing union labor. We have no reason to suppose that the plaintiff's architects were ignorant of conditions in the building trades, yet the contract was made, as we have pointed out, without a stipulation prohibiting the employment of non-union labor. The alteration work proceeded for more than two months during which it appears that neither the architects nor the unions protested against the employment of non-union labor. Even after the strike was called, it does not appear that the architects made any claim that the contractor was at fault in failing to accept the demand of the union. Under the law of this State the courts may not ascribe wrong to the members of the unions for attempting to obtain agreements for the employment of union labor, nor may they ascribe wrong

to an employer for employing workmen who are not members of the union, at least where an employer has not entered into an agreement binding himself to draw his employees from a particular group.

The plaintiff maintains that though we assume that the defendant is not chargeable with any fault causing stoppage of the work by a strike, yet it appears by the defendant's own admission that even without such stoppage it could not have completed the work on or before October first, and that the primary cause of the delay was its lack of money sufficient to carry on the work with diligence. That alleged admission is contained in a letter which the defendant wrote to the plaintiff on August 18th, four days after the strike was called. In that letter the defendant stated, among other things: " The conditions that have taken place in the building industry recently have caused the subcontractors to raise their contracts on us, claiming conditions beyond their control, such as the strike in the electrical line; strike on gypsum blocks; neet; high prices of material; scarcity of labor, etc. This condition has placed us in a very embarrassing position. It is now impossible for us to complete the building for October first occupancy. The renting after October is slow and uncertain.'' For that reason the defendant asked the plaintiff to increase its building loan by $20,000· and to make some additional concessions.

The letter, far from conceding that any delays have occurred which were due to lack of diligence on the part of the defendant, asserts that such delays as have occurred have been due to causes beyond its control. At most it contains an admission that delays beyond its control will render a completion of the work by October first impossible; that the cost of completion will be greater than it anticipated, and that it must have more money than it originally thought necessary to complete the work. There is nothing in the letter or in the record to show that lack of money contributed to the delay up to that time, although, as we have pointed out, a desire to save expense may have been the motivating cause for the employment of non-union labor. We need not upon this appeal consider whether under the contract, the date set for completion was of the essence, and whether failure to complete on the stipulated date would, if not excused by the terms of the contract,

constitute sufficient ground for foreclosure of the mortgages. That time had not arrived when the plaintiff entered upon the premises and commenced this foreclosure action. Neither by the letter nor by any other word or act did the defendant repudiate its obligation to complete the alteration work, unless the plaintiff agreed to waive delays and make an additional loan. Even if we assume that failure to complete the alteration work by October first would constitute a breach of the contract justifying foreclosure, and even if the mortgagee could avail itself of an anticipatory breach of that obligation, yet in this case no anticipatory breach has been pleaded or adequately proven. The plaintiff claims a right to foreclose on the ground that the defendant did not diligently and continuously carry on the work, and also breached the contract by assignment of moneys. It is entitled to judgment only if it proves at least one of these grounds for foreclosure.

We have shown that the findings that the defendant has failed to carry on the work diligently and continuously, and that delays were due to its fault, are not sustained by the evidence. The question remains whether judgment of foreclosure may be sustained on the ground that the defendant assigned moneys to become due under the contract or issued orders for the payment of such moneys. The defendant does not deny that it made and delivered assignments and orders for moneys payable under the building loan agreement. The parties have agreed that if the plaintiff " so elect " it may foreclose the mortgage for such cause. The plaintiff had notice of the first assignment not later than August 21st, and had notice of the second assignment about the time it was executed and delivered on August 27th. There is conflict of testimony as to whether the plaintiff expressly consented to the assignments. There is no dispute that the plaintiff failed to inform the defendant or the assignees that it objected to the assignments or, prior to the service of the complaint herein, that it elected to foreclose its mortgage for that reason. The defendant maintains that the plaintiff had lost the right of election to foreclose when the foreclosure action was begun.

ᵏThe trial judge stated in his opinion that even assuming for the purpose of argument that officials of the plaintiff " agreed to obviate the restriction concerning orders on payment, the

manner in which that agreement was made and the lack of consideration therefor inhibits conferring any legal force thereto.'' He found accordingly that ''plaintiff did not waive the terms of the building loan agreement providing that if defendant, Willow Builders Inc., made any order on payment, the mortgage debts should become due and payable.'' Upon this appeal no question arises whether an agreement made by the plaintiff without consideration to '' *waive the terms of the building loan agreement* '' could be given legal effect. The term waiver as '' commonly used in connection with contracts '' has '' different meanings.'' (3 Williston on The Law of Contracts, [Rev. ed.] § 679.) Upon this appeal the problem is not whether the plaintiff has by silence or express words attempted to alter the terms of the building loan agreement, but rather whether it has precluded itself from electing to foreclose the mortgage for the defendant's conceded failure to carry out the terms of the contract.

'' Where a contract is broken in the course of performance, the injured party has a choice presented to him of continuing the contract or of refusing to go on.'' (3 Williston on The Law of Contracts, [Rev. ed.] § 683.) If the injured party chooses to go on, he loses his right to terminate the contract because of the default. (See Restatement of the Law of Contracts, § 309.) There can be, then, no question of consideration. In this case the failure of the plaintiff to object to the assignments or orders for payment of moneys to become due, coupled with the continuation of discussions by the plaintiff and defendant of possible increase of the building loan, and other acts of the plaintiff showing that the plaintiff considered the contract still in existence, is compelling evidence of choice by the plaintiff to continue the contract. Without explanation or contradiction of this evidence the plaintiff cannot thereafter elect to foreclose its mortgage for a default which apparently it chose to disregard *as a ground for termination of the contract.*

For these reasons the judgments should be reversed and a new trial granted with costs to abide the event.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.