CHARLES H. SCUDDER, Appellant-Respondent, v HARRY R. BAKER et al., Respondents-Appellants.

Third Department, December 5, 1991

### APPEARANCES OF COUNSEL

*Williams, Du Brin & Burkich (Frank J. Williams, Jr.,* of counsel), for appellant-respondent.

*Kingsley, Towne & McLenithan, P. C. (James T. Towne, Jr.,* of counsel), for respondents-appellants.

### OPINION OF THE COURT

CASEY, J.

In this action, plaintiff seeks to recover the $30,000 balance allegedly due under a contract whereby plaintiff agreed to perform certain engineering services for defendants. The answer includes a counterclaim, seeking $295,000 as damages based upon allegations that plaintiff breached the contract. After a nonjury trial, Supreme Court awarded plaintiff $5,000 and dismissed the counterclaim. Both parties appeal from the judgments entered upon the court's decision.

The pertinent facts are as follows. Pursuant to the parties' contract, dated May 8, 1986, plaintiff agreed to perform planning and engineering services in connection with defendants' proposed Kings Plantation subdivision in the Town of Queensbury, Warren County. The contract contains several prefatory paragraphs, culminating in a provision which states that: "there is good reason to suppose that several model units can be built this year. If the water supply matter can be resolved at an early date perhaps Phase I of the Project can be under construction this fall. This is going to be our aim—there are, of course, no guarantees." The contract also provides that plaintiff "will endeavor to complete site planning and engineering to a degree necessary and sufficient to obtain Sketch Plan (i.e., conceptual) Approval of the Project Master Plan on or about June 17th, and Preliminary Approval of Phase I of the Project on or about July 22, 1986". The schedule called for submission of detailed plans for final approval of the rest of the project after final approval of phase I was obtained. The paragraph which sets forth the schedule concludes with the

following notation: "time is of the essence for all of us concerned with the Project".

The fee for plaintiff's services was fixed at $40,000, with $10,000 to be paid as a retainer and specified amounts due thereafter as the various approvals were obtained. The contract also provided that: "In the event the Project—including lands, plans or other instruments showing planning work-in-progress—is sold, transferred, or exchanged, the balance outstanding on the total engineering fee of $40,000 shall immediately become due and payable to this office." Defendants were the contract vendees of the land where the Kings Plantation subdivision was to be built, and the sale was expressly contingent upon formal approval of phase I of the project by the Town of Queensbury. Closing was originally scheduled for April 1, 1986, but defendants obtained extensions to September 30, 1986. Shortly before entering into the engineering services contract with plaintiff that is the subject of this action, defendants executed a contract for the sale of the Kings Plantation subdivision to BGH Enterprises, Ltd., with closing scheduled for "within 10 days from receipt of approval for municipal subdivision".

Sketch plan approval of the Kings Plantation subdivision was granted in June 1986, but due to delays involving the public water supply for the project and drainage, preliminary approval of phase I was not obtained until September 17, 1986. With final approval of phase I scheduled for discussion at the Town Planning Board's October 1986 meeting, defendants informed plaintiff in early October 1986 that their contract of May 8, 1986 for engineering services was terminated. Defendants assigned their interest, as contract vendees, in the land where the Kings Plantation subdivision was to be built to BGH Enterprises.

■ As limited by the proof submitted on his direct case, plaintiff's claim is based solely upon the contract provision which purports to make the entire unpaid balance of the $40,000 fee due and owing to plaintiff upon defendants' transfer of their interest in the Kings Plantation subdivision. In apparent recognition that the clause might be an unenforceable penalty, plaintiff argues that it is not a liquidated damages clause because it does not contemplate a breach of contract. Rather, according to the novel theory advanced by plaintiff, the clause recognizes defendants' right to transfer their interest in the project and was intended "to insure to [plaintiff] the benefit of his bargain in the event of an assignment without

regard to the credit worthiness of the transferee or other conditions or circumstances affecting the transferee". The benefit of plaintiff's bargain is that he be paid his fee upon his rendition of the engineering and planning services required by the contract. Without reference to the disputed clause, the contract clearly and unconditionally obligates defendants to pay plaintiff his fee upon his performance of engineering services. In short, if plaintiff performs the engineering services, defendants are obligated to pay his fee, which is the benefit of plaintiff's bargain. The disputed clause, however, requires defendants to pay plaintiff the entire fee upon the transfer of their interest in the project without regard to whether plaintiff has performed any of the services called for in the contract, thereby giving plaintiff far more than the benefit of his bargain.

Regardless of the label assigned to the disputed clause by plaintiff, we are of the view that it is in the nature of a liquidated damages clause (see, Barcomb v Alford, 125 AD2d 907), defining defendants' transfer of their interest in the project as a breach of contract and fixing the amount to be paid by defendants for that breach. "The rule is now well established. A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation * * * If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced." (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 425.)

Inasmuch as the clause requires the payment of the entire balance of the $40,000 fee upon defendants' transfer of their interest in the project without regard to the services performed by plaintiff prior to the transfer and regardless of whether the transfer has any effect on the ability of plaintiff or defendants to perform their contractual obligations, we conclude that the clause is an unenforceable penalty (see, Vernitron Corp. v CF 48 Assocs., 104 AD2d 409; Huntington Coach Corp. v Board of Educ., 49 AD2d 761, affd 40 NY2d 892). At trial, plaintiff expressly declined to seek recovery on the basis of his performance of engineering and planning services, either on the contract or on a quantum meruit theory, relying instead exclusively upon the clause that we have declared to be an unenforceable penalty. The complaint must, therefore, be dismissed.

Turning to the counterclaim, we agree with Supreme Court that defendants failed to prove plaintiff's breach of contract. Assuming that the contract should be construed as making time of the essence (see, Sparks v Stich, 135 AD2d 989, 991), the contract also provides that: "In the event the Queensbury Town Board, Queensbury Planning Board, or any other office having jurisdiction in this matter were to impose an unforeseen condition, requirement, restriction or delay, beyond our control or influence, [plaintiff] will not be judged in default of this Agreement."

■ Defendants focus upon plaintiff's failure to seek preliminary approval of phase I at the Planning Board's July 1986 meeting, but the record establishes that plaintiff delayed until the August 1986 meeting because of the earlier inability to demonstrate the availability of a public water supply for the subdivision. Defendants claim that plaintiff had enough information in July 1986 to go to the Planning Board, but the evidence on this issue is equivocal at best. It is apparent from the record that in the exercise of his professional judgment plaintiff was of the opinion that he had insufficient information to seek preliminary approval prior to August 1986. Defendants' claim that an earlier application using the information then available might have been successful is pure speculation, unsupported by evidence in the record.

After receiving approval of the extension of the water district to provide public water to the subdivision, plaintiff submitted the application for preliminary approval of phase I to the Planning Board in time for its August 1986 meeting. The application was tabled, however, due to concerns about drainage. According to plaintiff's associate, work on the drainage proposal was complete and the Town's Highway Superintendent had approved the proposal, but the Planning Board's consulting engineer expressed some concerns about it. The concerns were addressed and preliminary approval of phase I was granted at the Planning Board's September 1986 meeting. Plaintiff then applied for final approval of phase I. Despite defendants' claims to the contrary, the evidence is insufficient to support a finding that plaintiff failed to act with due diligence or that the delay was not due to matters beyond plaintiff's control. The counterclaim was, therefore, properly dismissed.

MAHONEY, P. J., MIKOLL and CREW III, JJ., concur.

Ordered that the order and judgment dated January 17,

1991 and entered January 25, 1991 is modified, on the law, without costs, by reversing so much thereof as awarded judgment in favor of plaintiff; complaint dismissed; and, as so modified, affirmed.

Ordered that the judgment dated and entered January 25, 1991 is reversed, on the law, without costs.