John F. **BIGDA**, Plaintiff,

v.

**FISCHBACH CORPORATION,**
Defendant.

No. 92 Civ. 2226 (RLC).

United States District Court,
S.D. New York.

April 19, 1994.

Jones Act and unseaworthiness theories of liability); *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 686 (10th Cir.1981).

Liddle, O'Connor, Finkelstein & Robinson, New York City (Andrew S. O'Connor, of counsel), for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City (Ellen M. Martin, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, John H. Bigda, brings this diversity action against the Fischbach Corporation ("Fischbach"), for damages resulting from claimed breaches of his employment agreement. Plaintiff's first cause of action seeks a minimum of $601,377 in liquidated damages. His second cause of action seeks an undetermined amount of money for defendant's failure to provide certain supplemental pension benefits, his third, an undetermined amount of money in severance pay, and his fifth, $400,918 for defendant's repudiation of its obligations under the Senior Executive Benefit Plan.[1] In his sixth cause of action, Bigda seeks liquidated damages for Fischbach's willful failure to pay his wages in violation of New York Labor Law § 198. See N.Y.Labor Law § 198 (McKinney 1986).

Plaintiff has moved for summary judgment on his first and fifth causes of action, partial summary judgment on his second, third and sixth causes of action, and to compel the production of documents relating to his third cause of action. Defendant has cross-moved for summary judgment on all five causes of action, and also seeks to amend its Answer, filed June 22, 1992, to add a counterclaim for breach of the fiduciary duty Bigda owed to Fischbach while serving as the company's general counsel and secretary.

---

1. Plaintiff's fourth cause of action, relating to unpaid vacation benefits, has been settled.

## I.

### A.

The undisputed facts are as follows. Bigda became the general counsel and secretary of Fischbach in 1980. Beginning that same year, Victor Posner, a well-known corporate raider, began to purchase Fischbach's outstanding common stock through a company called Pennsylvania Engineering Corporation ("PEC"). In an effort to ward off a takeover by PEC, Fischbach entered into a standstill agreement with PEC which limited the percentage of outstanding common stock that PEC or its affiliates could own (the "Standstill Agreement").

In April, 1984, Posner, in conjunction with Ivan Boesky, Michael Milken and others, brought an action against Fischbach in Florida state court, seeking to set aside the restrictions contained in the Standstill Agreement. That action was settled in January, 1985 when the parties entered into a ten-year stipulation of settlement (the "Stipulation") which gave ultimate control of defendant to Posner, while preserving operational control and certain prerogatives for then-current management.

Among other things, the Stipulation required that certain key Fischbach employees be offered five-year employment agreements, and plaintiff entered into one on October 25, 1985 (the "Employment Agreement"). The Employment Agreement established and ensured the level of plaintiff's salary, job responsibilities and other entitlements, and gave Bigda the right to terminate and collect liquidated damages if Fischbach breached 1) any term of the Stipulation, 2) certain enumerated provisions of the Employment Agreement, or 3) any unenumerated provision of the Employment Agreement, which breach Fischbach then failed to cure within 10 days.

Plaintiff's liquidated damages (the "Damages Provision") included, among other things, payment of triple his most recent base salary as of the date of the termination, a lump sum cash payment at his normal retirement age equal to the pension benefits that he would have been entitled to under the retirement plan if he had continued to be employed by defendant for three additional years, and the continued participation for three years in all benefit programs in which he was entitled to participate immediately prior to the date of termination. The full amount of liquidated damages was payable regardless of the Employment Agreement's remaining term, and Bigda was relieved of any obligation to mitigate damages.

Posner controlled Fischbach from 1985 until August, 1990 (the "Posner era"), during which time Bigda believed that defendant breached both the Stipulation and the Employment Agreement repeatedly (together, the "Posner era breaches"). More specifically, Bigda believed that Posner breached the Employment Agreement by diminishing plaintiff's responsibilities and authority as general counsel and secretary. Also, in 1988, Fischbach terminated its pension plan and its policy of offering severance packages based upon the length of an employee's tenure at Fischbach. According to Bigda, these breaches entitled him to terminate the Employment Agreement and collect his liquidated damages.

Bigda, however, did not terminate the Employment Agreement during this time, and was still in Fischbach's employ when it was acquired in August, 1990 by the American Insurance Group ("AIG"), through AIG Acquisition Corporation. AIG has controlled Fischbach since that time (the "AIG era").

On September 26, 1990, just four weeks before the Employment Agreement was due to expire, Bigda mentioned, at a meeting with AIG attorney Richard D'Alessandri and other AIG representatives, that he was contemplating suing for breach of the Employment Agreement. Without any further discussion, Bigda terminated the Employment Agreement on October 3, 1990. In compliance with the termination clause, he sent his notice, by registered mail, to "Fischbach Corporation, Attention: Chairman," and later received a signed receipt. Bigda sent no copies to any specific officers of defendant, nor did he contact anyone personally.

Bigda continued to work as legal counsel, but did not mention his potential lawsuit to any Fischbach officer until after the Compa-

ny terminated him approximately one year later. At this time, during a meeting with defendant's chief administrative officer, Patricia Moore, to discuss a severance package, plaintiff disclosed that he was asserting a claim for liquidated damages under the Employment Agreement.

### B.

The parties disagree about their respective performances under the Employment Agreement from the time of AIG's takeover through October 3, 1990. Thus, they vigorously dispute whether Fischbach breached the Agreement.

According to Bigda, from the time it took control of defendant, AIG interfered with his authority and responsibilities as general counsel and secretary. For example, D'Alessandri communicated directly with outside counsel representing Fischbach, and became actively involved in various legal matters, including the claim of Stanley Shaughnessy that Fischbach breached his employment agreement and the preparation of defendant's proof of claim in the bankruptcy proceeding of Drexel Burnham & Lambert. D'Alessandri also prepared the articles of incorporation and by-laws of AIG Acquisition Corp., and took responsibility for the preparation of the minutes of all shareholder and board of directors meetings. Bigda further claims that AIG brought in two more attorneys, Paul Schorr and Thomas Shea, to assume day-to-day responsibility for legal matters previously within plaintiff's authority, including work on mergers and acquisitions, and the hiring of outside counsel to review the legal problems of one of Fischbach's subsidiaries. Finally, specific policies of AIG deviated both from the terms of the Stipulation and from past practices during the Posner era, including the continuation of certain bonus programs and the incorporation of salary increases into the Senior Executive Benefit Plan.

Of particular concern to plaintiff was a memo—circulated on September 13, 1990—depicting a new internal structure for the company and designating Shea as the head of Fischbach's legal affairs department. This new organizational chart grew out of a pro-posed joint venture that Fischbach sought to enter into with Peter Kiewit & Sons, Inc.

For its part, defendant denies that D'Alessandri, or any other AIG employee, interfered with Bigda's responsibilities. When D'Alessandri first met with plaintiff in 1990 to discuss various lawsuits pending against Fischbach, Bigda allegedly told D'Alessandri to speak with the company's chief outside antitrust counsel because he was unfamiliar with the details of the actions. Defendant maintains that on all matters relating to its business, D'Alessandri made a practice of consulting with Bigda, and seeking his comments as necessary. With respect to specific matters such as the proof of claim in the bankruptcy proceeding, defendant claims that D'Alessandri either did not become involved with these matters until after the expiration of the Employment Agreement or, as happened with the dispute involving Stanley Shaughnessy's employment agreement, became involved on behalf of AIG, and not Fischbach. Defendant further denies that D'Alessandri prepared any minutes of shareholder or board of directors meetings until after the Employment Agreement's expiration.

Finally, defendant claims that the organizational chart showed only that Shea would head the legal affairs department of a new corporate entity resulting from the joint venture, and that plaintiff would remain in charge of the legal department of Fischbach. Furthermore, defendant has indicated that the proposed joint venture was never consummated, so that none of the proposed changes were ever implemented in any event.

### II.

To prevail on a summary judgment motion, the moving party must show that "there is no genuine issue as to any material fact and that [it is] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue" which must be reserved for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Uncertainty regarding the true state of any

material fact will defeat a motion for summary judgment. *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir. 1982).

### A.

Fischbach claims that Bigda is not entitled to summary judgment on his first cause of action because he elected to continue to perform under the Employment Agreement rather than seek damages for breach. Bigda contends that he was entitled both to continue his performance under the Employment Agreement and to pursue damages. New York law, however, does not afford plaintiff this option.

■■■ The power to terminate a contract following a breach is one of election, *Filmline (Cross–Country) Prods., Inc. v. United Artists,* 662 F.Supp. 798, 805 (S.D.N.Y.1987) (Sprizzo, J.), *aff'd,* 865 F.2d 513 (2d Cir.1989), requiring a choice between two inconsistent remedies available for the redress of a wrong. *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919); *Apex Pool Equipment Corp. v. Lee,* 419 F.2d 556, 562 (2d Cir.1969). When an executory contract is breached, the non-breaching party to the contract faces two options: he may either continue to perform under the contract or he may terminate the contract. *Emigrant Industrial Savings Bank v. Willow Builders, Inc.,* 290 N.Y. 133, 144, 48 N.E.2d 293, 299 (1943); *Filmline,* 662 F.Supp. at 805. If the non-breaching party

elects to continue performance, he may not later choose to terminate the contract on account of the breach. *Filmline,* 662 F.Supp. at 805.[2]

■■■ Plaintiff alleges that Fischbach breached the Employment Agreement numerous times from its inception through the end of the Posner era. Assuming that events transpired as he maintains,[3] Bigda clearly overlooked any breaches during the Posner era and elected to continue to enjoy the benefits of the Employment Agreement. Having so elected, Bigda relinquished the opportunity to terminate the Employment Agreement because of the Posner era breaches.

■■■ Bigda further claims that Fischbach's breaches of the Employment Agreement during the AIG era also entitle him to liquidated damages. The AIG era breaches must be considered separately from the Posner era breaches because Bigda's election to continue his contract following the Posner era breaches would not necessarily prevent a subsequent termination if new breaches arose during the AIG era. *See Apex,* 419 F.2d at 562.

■■■ However, with respect to these breaches, material issues of fact exist about whether the actions of AIG employees deprived Bigda of responsibilities or were a convenient pretext used to justify Bigda's otherwise calculated termination of the Employment Agreement. Further, even if Fischbach did breach Bigda's contract, the

---

2. Bigda contends that the "no waiver" clause contained in paragraph 11 of the Employment Agreement enabled him to continue to perform while reserving his right to sue for breach at some later date. The clause reads, in relevant part, "No waiver by either party ... of any breach by the other party ... shall be deemed a waiver of similar ... provisions ... at any ... subsequent time." But, as discussed above, the decision of a non-breaching party to continue to perform is not a "waiver" of that party's right to terminate the contract, but an election, *see Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 388–89, 122 N.E. 378, 381 (1919); *Apex Pool Equipment Corp. v. Lee,* 419 F.2d 556, 562 (2d Cir.1969), and so the clause is irrelevant to this dispute. Further, Bigda cites to no precedent to support this apparently novel extension of a boilerplate provision.

Nor can plaintiff prevail on his claim that the doctrine of election does not apply where an

"independent external event," in this case the breach of the Stipulation, enables a party to terminate an agreement. The basis of the doctrine of election is the occurrence of an event that requires one party to make a choice between two inconsistent rights, in this case the right to continue the contract or the right to terminate it. *See 5 Williston on Contracts* § 683, at 270–71 (3rd ed. 1961). Here, plaintiff was faced with this choice, and so his particular characterization of the event giving rise to such choice is of no import. Once again, plaintiff provides no legal support for his position.

3. Defendant has neither agreed nor disagreed with Bigda's version of events during the Posner era. Rather, it apparently has accepted Bigda's "belief" that the Employment Agreement had been breached during this time.

court is unwilling to find, at least at this stage of the proceedings, that Bigda elected to continue performance with respect to these breaches. Defendant has not yet established that plaintiff chose to continue performance, and the limited time that elapsed between August and October, 1990, is too short a period of time to find, absent further proof, that an election was implied.

### B.

Alternatively, Fischbach argues that the Damages Provision is not a liquidated damages clause, but an unenforceable penalty. Liquidated damages may be established in advance where the amount established "bears a reasonable proportion to the probable loss," and actual damages are difficult to ascertain as of the time the parties enter into the contract. *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 425, 393 N.Y.S.2d 365, 369, 361 N.E.2d 1015, 1019 (1977). A clause which provides for an amount "plainly disproportionate" to actual damages is deemed a penalty and is not enforceable because it compels performance by the "very disproportion" between liquidated and actual damages. *Id.* Both the reasonableness of the liquidated damages and the certainty of actual damages must be measured as of the time of the contract's execution rather than at the time of the loss actually incurred. *Vernitron Corp. v. CF 48 Associates*, 104 A.D.2d 409, 409, 478 N.Y.S.2d 933, 934 (2d Dept.1984). The enforceability of a liquidated damages provision is a matter of law. *See Leasing Service Corp. v. Justice*, 673 F.2d 70, 74 (2d Cir.1982).

However, due consideration must also be given to the nature of the contract and the attendant circumstances. *See J.R. Stevenson Corp. v. County of Westchester*, 113 A.D.2d 918, 920–21, 493 N.Y.S.2d 819, 823 (2d Dept.1985); *Interpetrol Bermuda Ltd. v. Stinnes Interoil, Inc.*, No. 88 Civ. 8620, 1990 WL 250169, at *4–5, 1990 U.S. Dist. LEXIS 17376, at *13 (S.D.N.Y. December 26, 1990) (Leisure, J.). Further, the New York Court of Appeals has cautioned against interfering with the agreement of the parties, absent some persuasive justification.

*Cf. Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 577, 415 N.Y.S.2d 800, 803, 389 N.E.2d 113 (1979) ("Absent some element of fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach," court should enforce agreement of the parties). Relevant here is whether the parties were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power, and similar damages provisions were incorporated into other employment contracts. *See Rattigan v. Commodore International Limited*, 739 F.Supp. 167, 170 (S.D.N.Y.1990) (Mukasey, J.); *see also Boyle v. Petrie Stores Corp.*, 136 Misc.2d 380, 391, 518 N.Y.S.2d 854, 861 (Sup.Ct.1985). Finally, the party challenging the provision—here, Fischbach—has the burden to prove that it was freely contracted to and is not a penalty. *Rattigan*, 739 F.Supp. at 170.

Defendant argues that the Damages Provision is a penalty because it provided Bigda with approximately three additional years of salary and benefits, even though only several weeks remained in the term of the Employment Agreement when Bigda terminated the contract. Lacking any sort of mechanism to adjust damages based upon the remaining term of the contract, the Damages Provision provided Bigda a windfall grossly disproportionate to his actual damages.

Admittedly, had the Damages Provision been drafted with such a mechanism, liquidated damages might have more accurately reflected actual damages, but the test of a liquidated damages clause is not mere proportionality of probable to actual loss, but rather plain or gross disproportionality. *See Truck Rent–A–Center*, 41 N.Y.2d at 425, 393 N.Y.S.2d at 369, 361 N.E.2d at 1019. A liquidated damages clause should not be deemed a penalty simply because the balance between actual and probable damages turns out not to be perfectly or flexibly proportioned. *Cf. Rattigan*, 739 F.Supp. at 171 (liquidated damages provision not a penalty clause if lump sum payment due upon termination is not discounted to its present value). A three year payout on a five year contract, if freely bargained for, did not, as of

the signing of the Employment Agreement, provide for damages plainly disproportionate to plaintiff's probable actual loss. For example, if Bigda had terminated the contract early in its term, he may not have received his full five years of salary and benefits. That events evolved such that plaintiff may now receive in excess of five years of salary and benefits does not, thereby, render the Damages Provision unenforceable.

■ Defendant also argues that the Damages Provision is unenforceable because it provided that the full three years of damages were payable regardless of whether the triggering breach was material or trivial. *See, e.g., Fifty States Management Corp.,* 46 N.Y.2d at 577–78, 415 N.Y.S.2d at 803, 389 N.E.2d at 116; *Rattigan,* 739 F.Supp. at 171. Fischbach points out that the full measure of liquidated damages would have come due if any unenumerated provision of the Employment Agreement, no matter how trivial, was breached, and the company failed to cure within 10 days. For example, defendant would have owed plaintiff roughly $1 million in liquidated damages if the company gave plaintiff a smaller office or cut back on his use of a company car and then failed to restore the status quo after 10 days.[4] Similarly, Fischbach argues that the Damages Provision is unenforceable because it was triggered by a breach of the Stipulation, an agreement which bears no relation to plaintiff's ability to perform under the Employment Agreement. *See Scudder v. Baker,* 172 A.D.2d 40, 43, 576 N.Y.S.2d 920, 923 (3d Dept.1991), *appeal denied,* 80 N.Y.2d 757, 588 N.Y.S.2d 825, 602 N.E.2d 233 (1992) (liquidated damages clause unenforceable where

triggered by event having no effect on ability of plaintiff to perform contractual obligations).

Yet, while both of these aspects of the Damages Provision are indicia of a penalty clause, the court is reluctant to grant defendant summary judgment because issues of material fact exist surrounding the negotiation of the Employment Agreement.[5] Plaintiff claims that the Damages Provision was negotiated at arm's length and was designed to provide key Fischbach employees with some measure of security in the face of a hostile takeover by Posner. Outside counsel drafted the Employment Agreement, and both sides were sophisticated and aware of the Agreement's terms. Furthermore, nearly identical agreements were offered to other Fischbach executives.

Defendant, however, maintains that outside counsel worked for and in the interests of plaintiff and Fischbach's then current management team. It rejects plaintiff's claim that the key employees were on one side with Fischbach on the other, and argues instead that these various employees, in effect, foisted their employment agreements upon the company. Ultimately, a jury must decide which of the versions of the negotiation to accept, and so summary judgment would not be appropriate on this basis for either party.

## C.

■ Defendant further claims that plaintiff is not entitled to recover under the Damages Provision because he violated the duty of good faith implied in every contract,

---

4. Plaintiff contends that such a breach would not be trivial because, if the 10 day grace period expired without an appropriate cure, an otherwise trivial breach would become material. This argument makes little sense because the underlying effect of the Damages Provision—that defendant would face a million dollar liability for eliminating an insubstantial perquisite—would not change simply because 10 days had passed. *Cf. Truck Rent–A–Center, Inc. v. Puritan Farms 2nd. Inc.,* 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 369, 361 N.E.2d 1015, 1019 (1977) (liquidated damages provision unenforceable where it secures "performance by the compulsion of the very disproportion").

5. The court disagrees with defendant's claim that consideration of the facts surrounding the negotiation of the Employment Agreement is secondary to the operation of the Damages Provision itself. Defendant bases its claim upon cases in which a court first addressed the substantive terms of a liquidated damages provision and then addressed the facts surrounding the given negotiation. *See, e.g., Rattigan v. Commodore Int'l Ltd.,* 739 F.Supp. 167, 170–72 (S.D.N.Y.1990) (Mukasey, J.). However, the conclusion drawn by defendant from these cases—that the effect of a liquidated damages provision is the primary focus of a court's analysis—relies upon an interpretive gloss which the court is disinclined to follow.

which precludes a party from engaging in conduct that will deprive the other party of the benefits of their agreement. *E.g., Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980); *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir.1989). Defendant claims that plaintiff breached this duty by terminating the Agreement to obtain a windfall of three additional years of salary and benefits and doing so in a manner calculated to deprive defendant of actual notice of his termination. *See Leberman*, 880 F.2d at 1560–61. Any reasons offered for terminating the Agreement are, therefore, mere pretext, particularly Bigda's claim that the proposed September, 1990 organizational chart was the "final straw."

Plaintiff claims that at all times he acted in Fischbach's best interests, not exclusively his own. He argues that he terminated the Employment Agreement because of defendant's breaches, and that he did so in full compliance with the Agreement.

The line between plaintiff's interests and Fischbach's interests, however, is not bright enough at this point to enable the court to determine whether Bigda acted improperly. Factual disputes still exist about the nature of defendant's performance under the Employment Agreement, and so the court is unwilling to conclude that Bigda's reasons for terminating the Agreement were mere pretext. Further, defendant's claim that Bigda sought to obtain a windfall requires the court to assess plaintiff's intent—a factual inquiry generally inappropriate for resolution by summary judgment, *Leberman*, 880 F.2d at 1559–60, and one that the court is reluctant to undertake here.

Moreover, by challenging the means by which Bigda terminated the Employment Agreement, defendant, in effect, asks the court to find that plaintiff's duty of good faith went beyond satisfying the literal requirements of the Employment Agreement. Such a claim, if accepted, would obligate plaintiff to have either identified a specific "Chairman" or suitable substitute to receive his termination notice at a time when there was some uncertainty as to who constituted the senior management of Fischbach, or to have made phone calls until he was sure that his termination had been received.

Although there is no question that Bigda could have done more, without greater proof of deception or an intent to deceive, sufficient doubts exist about Bigda's actions, and the court cannot now find that Bigda's failure to take the steps demanded by defendant violated his duty of good faith. The parties agree that Bigda complied with the literal terms of the Employment Agreement and, according to Bigda, apparently made some further effort, albeit unsuccessful, to speak directly with at least one member of the new management of Fischbach. Bigda could have raised his claim for breach during the course of certain meetings with Fischbach officers, but the court cannot find at this point that failure to do so rose to the level of "studious avoidance" required to find that he violated his duty of good faith. *Leberman*, 880 F.2d at 1560–61. A fuller airing of the varying versions of what happened is appropriate before such a determination can be made.

### D.

■ For reasons similar to those discussed in Part I.A. above, plaintiff's motion for summary judgment with respect to his remaining causes of action must be denied, and defendant's cross-motion on each cause of action granted. With respect to the second cause of action, defendant terminated its pension plan in October, 1988, and did not purchase an annuity in either of the two years following. Plaintiff, nevertheless, elected to continue to perform under the Employment Agreement, and cannot now argue either that Fischbach's decision to terminate the plan or its failure to purchase an annuity entitled him to terminate the Employment Agreement in 1990.

Plaintiff's third and fifth causes of action fail for the same reason. In 1988, Fischbach stopped its policy of extending severance payments based upon years of employment and discontinued its Senior Executive Benefit Plan.[6] Plaintiff had ample opportunity to

---

**6.** Plaintiff claims that moneys owed him pursuant to the Plan should be paid to him currently because defendant has anticipatorily breached its obligation by refusing to pay even once he satis-

terminate the Employment Agreement prior to 1990 because of these breaches, but continued his performance instead.

 In his sixth cause of action, Bigda seeks additional damages under New York Labor Law § 198(1–a), alleging that Fischbach "willfully" refused to pay plaintiff his "required" wages, thereby entitling him to liquidated damages of 25% of the amount of wages found to be due. *See* N.Y.Labor Law § 198 (McKinney 1986). Assuming *arguendo* that the Labor Law covers plaintiff,[7] defendant's refusal to pay Bigda is not "willful" for purposes of the statute because there is a bona fide dispute over his entitlement to these wages. *See Berardi v. Fundamental Brokers, Inc.,* No. 89 Civ. 5143, 1990 WL 129174, at *6–7, 1990 U.S. Dist. LEXIS 11388, at *19–20 (S.D.N.Y. August 30, 1990) (Martin, J.).[8]

### III.

 With respect to his third cause of action, plaintiff seeks additional discovery to ascertain whether Fischbach began a new severance pay policy since 1988, arguing that if so he would be entitled to additional severance benefits. However, to prevail on a claim for severance pay, a former employee must show both that an employer had a regular practice of making severance payments and that the employee relied on the employer's severance pay practices in accepting or continuing his employment. *In re Lyntex Corp.,* 403 F.Supp. 284, 287 (S.D.N.Y. 1975) (Brieant, J.); *Gallagher v. Ashland Oil, Inc.,* 183 A.D.2d 1033, 1034, 583 N.Y.S.2d 624, 625–26 (3d Dep't), *appeal denied,* 80 N.Y.2d 758, 589 N.Y.S.2d 309, 602 N.E.2d 1125 (1992).

 To prevail, Bigda must do more than prove simply that a severance policy existed or that he was employed by Fischbach during such time. *See Gallagher,* 183 A.D.2d at 1034, 583 N.Y.S.2d at 625–26. Instead, plaintiff must establish reliance "unequivocally referable" to the severance pay policy. *Id.,* 583 N.Y.S.2d at 626; *see also Smith v. N.Y. State Elec. & Gas Corp.,* 155 A.D.2d 850, 850, 548 N.Y.S.2d 117, 118 (3d Dep't 1989) (requiring employee to show "detrimental reliance").

Plaintiff has not established that he relied upon the existence of a severance policy as a condition of his continuing employment with defendant. Such facts should be in plaintiff's control, even without the additional discovery which plaintiff seeks. Therefore, plaintiff's motion to compel additional discovery is denied.

### IV.

Finally, defendant seeks to amend its Answer, filed June 22, 1992, to assert a counterclaim that Bigda breached his fiduciary duty to Fischbach. Defendant bases the counterclaim on allegations that Bigda 1) failed, from March 30, 1989, to October 3, 1990, to notify Fischbach of his claim for breach of the Employment Agreement, 2) failed, from October 3, 1990, through December, 1991, to ensure that Fischbach had actual notice of his claim, 3) served as Fischbach's counsel in matters that bore on his claim without notice to the company, and 4) misappropriated Fischbach documents for use against the company in support of his claim.

Defendant explains its failure to include the counterclaim in its Answer by virtue of its reliance upon Bigda's oral representations, during a meeting in June, 1992, that the allegations were untrue. Further, ac-

---

fies the conditions for payment. This contention is unsupported by the record. Further, in his affidavit, Fischbach's chief executive officer has re-affirmed the company's willingness to pay defendant in accordance with the terms of the Plan.

**7.** The parties dispute whether the Labor Law was meant to cover high ranking executives such as Bigda. Case law is inconsistent, *compare Daley v. Related Cos.,* 179 A.D.2d 55, 581 N.Y.S.2d 758 (1st Dep't 1992) (executives covered) with *Rivers v. Butterhill Realty,* 145 A.D.2d 709, 534 N.Y.S.2d 834 (3d Dep't 1988) (executives not

covered), but to resolve the issue at hand, the court need not decide this question.

**8.** Although no New York state court has construed "willfulness" for the purposes of § 198 of the Labor Law, the court in *Berardi* undertook a thorough examination of analogous provisions in other states "imposing statutory penalties for a willful failure to pay wages" and concluded that the existence of a bona fide dispute precluded a finding of willfulness.

companying the copy of the Answer served on plaintiff was a letter stating that Fischbach "reserved the right to move to amend [the Answer to add this claim] should the facts as developed in discovery so warrant." Defendant now seeks to exercise the right that it previously reserved.

Under Rule 13(f), F.R.Civ.P., a court may grant a party's motion to "set up a counterclaim by amendment," if the pleader failed originally to assert the claim "through oversight, inadvertence, or excusable neglect, or when justice requires." Fed.R.Civ.P. 13(f). Rule 13(f), F.R.Civ.P., should be read together with Rule 15(a), F.R.Civ.P., which provides that leave to amend a pleading " 'shall be freely given when justice so requires,' " *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y.1992) (Mukasey, J.), but the decision whether to grant leave to amend is "firmly committed" to the discretion of the court. *Index Fund, Inc. v. Hagopian,* 107 F.R.D. 95, 98 (S.D.N.Y.1985) (Tenney, J.). When considering a motion to add a counterclaim, a court should consider whether 1) the counterclaim is compulsory, 2) the pleader has acted in good faith and has not unduly delayed filing the counterclaim, 3) undue prejudice would result to the plaintiff and 4) the counterclaim raises meritorious claims. *Northwestern Nat. Ins. Co. v. Alberts,* 717 F.Supp. 148, 153 (S.D.N.Y.1989) (Sweet, J.).

Although the action was commenced March 30, 1992, defendant claims that it lacked facts sufficient to assert the counterclaim until Bigda was deposed in January, 1993. Moreover, defendant argues that, even if it erred in waiting until after the deposition to seek to amend, plaintiff would not be unduly prejudiced if the counterclaim were asserted now. Defendant contends that it put plaintiff on notice of the counterclaim both in the meeting of the parties on June 18, 1992, and in the letter accompanying its Amended Answer, dated June 22, 1992. Furthermore, defendant claims that Bigda should be prepared to defend the counterclaim because it is based on facts "central" to

one of Fischbach's "key defenses" in the existing action to which Bigda has already responded in this summary judgment motion—that plaintiff's termination of the Employment Agreement was ineffective because he breached his implied duty of good faith.

Defendant maintains that it will be prejudiced if its motion is denied because the first basis for its counterclaim—that plaintiff breached its fiduciary duty to Fischbach by failing to give the company notice of his claim for breach—is compulsory, and would therefore be lost if not asserted in the current action. *See* Fed.R.Civ.P. 13(a). Further, according to defendant, the other three bases raise issues relevant to plaintiff's breach of contract claim, and so should all be decided in a single action.[9]

Bigda argues that defendant learned no new facts through his deposition, and so has no excuse for failing to assert the counterclaim earlier. He also claims that any "notice" he received of the facts upon which the counterclaim is based—either through the meeting with defendant, defendant's letter, its motion for summary judgment (which was filed after the close of discovery) or elsewhere—has been inadequate to enable him to defend against such a claim, and granting leave to amend at this point would prejudice him as a result.

In general, the court believes that the equities in this matter are fairly evenly divided. Defendant has not adequately explained why it failed to assert the counterclaim on the basis of plaintiff's denial alone. It had sufficient opportunity at least to speak with its own employees to form some sense about the bases for the counterclaim. Nor has it convinced the court that it could not have asserted the counterclaim prior to Bigda's deposition and the close of discovery. *See Am. Communications Ass'n v. Retirement Plan for Employees of RCA Corp.,* 488 F.Supp. 479, 484 (S.D.N.Y.) (Weinfeld, J.), *aff'd,* 646 F.2d 559 (2d Cir.1980) (discovery rules designed to support properly pleaded cause of action, not to discover whether claim exists). However, the counterclaim does

---

9. Defendant does not elaborate on its claim that the other three bases for the counterclaim are permissive, rather than compulsory. Plaintiff

does not address this issue, and so the court accepts, without so finding, defendant's characterization.

raise meritorious claims. *See Northwestern Nat. Ins. Co.*, 717 F.Supp. at 153. Fischbach's arguments were sufficient to defeat Bigda's various claims for summary judgment, and, if defendant can prove its version of the events, it may well prevail on its counterclaim. Therefore, defendant's motion should be granted.

■ However, the court cannot agree that Bigda is adequately prepared to defend against the counterclaim without further discovery.[10] Therefore, the court, grants plaintiff leave to re-open discovery for the limited purpose of deposing, as requested by plaintiff, Robert Kiley, and, if necessary, Charles Steuber, James Walker and Stanley Shaughnessy. Such discovery shall be limited to areas relevant to the counterclaim. Defendant has indicated that it does not require additional discovery, and so none will be granted.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment on all causes of action is denied. Defendant's cross-motion is denied on plaintiff's first cause of action, but granted on plaintiff's second, third, fifth and sixth causes of action. Plaintiff's motion to compel discovery in connection with his second cause of action is denied. Finally, defendant's motion to amend its Answer is granted, and plaintiff is permitted to re-open discovery in the manner discussed above.

**IT IS SO ORDERED.**

---

**10.** Despite the various indirect ways in which plaintiff might have learned of the nature of the counterclaim, it could not know its precise contours until defendant filed its reply to plaintiff's summary judgment motion—which occurred after the close of discovery. Further, assuming that plaintiff has only finite resources with which to pursue this litigation, priorities must necessarily be established upon assessments of real and potential dangers. The likelihood that resource allocations would have been different had a counterclaim been asserted, rather than threatened upon the happening of certain future events, cannot be ignored.