Thomas J. RATTIGAN, Plaintiff,

v.

COMMODORE INTERNATIONAL LIMITED, Defendant.

COMMODORE INTERNATIONAL LIMITED, Counterclaim Plaintiff,

v.

Thomas J. RATTIGAN, Counterclaim Defendant.

No. 87 Civ. 2729 (MBM).

United States District Court, S.D. New York.

June 5, 1990.

Jonathan L. Rosner, Rosner & Goodman, New York City, for plaintiff-counterclaim defendant.

Michael A. Cardozo, Michele M. Ovesey, Claudia Grossman Jaffe, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant-counterclaim plaintiff.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant Commodore International Limited moves for an order declaring § 9(a) of the employment agreement between plaintiff Thomas Rattigan and Commodore to be unenforceable as a penalty. For the reasons set forth below, defendant's motion is denied.

### I.

The basic facts and contentions in this case have been set forth previously in the opinion and order denying summary judgment, issued on May 5, 1988. Familiarity with these facts and contentions is assumed.

Defendant argues that the section of plaintiff's employment agreement providing for the acceleration of contract benefits to Rattigan upon the occurrence of certain events is not an enforceable liquidated damages clause, but is an unenforceable penalty. Section 9(a) of the agreement provides that if Rattigan's employment is terminated for any reason other than his death, permanent disability, voluntary resignation—except for resignation as described in § 9(c)—or for cause, as described in § 9(b), Rattigan will receive an accelerated payment of his salary through May 31, 1991, all bonuses guaranteed in the contract, all retirement benefits guaranteed by the contract, and all the shares he would have received until the end of the contract term free of all restrictions.

Section 9(c) provides that if "Rattigan should resign his employment hereunder because of the occurrence of any of the following events described hereinbelow, such resignation shall not be deemed to be a voluntary resignation for the purposes of this Agreement, with the consequence that Rattigan will, under such circumstances, be entitled to the payments and benefits described in subsection a of Section 9 hereinabove." The circumstances which trigger § 9(a)'s payment provision include a material diminution or material change in the character of Rattigan's duties, a material change in the location where these duties are to be performed outside a 100–mile radius of certain major cities, a dissolution, liquidation or merger of Commodore, and certain changes in the controlling or principal shareholder of the company.

As set forth below, because § 9 of the employment agreement provides for damages in the event of certain material breaches which are not grossly disproportionate to the actual injury that Rattigan could sustain in the event of such a breach, the section will be enforced if the trier of fact determines that Rattigan's resignation was involuntary and without cause as defined in the agreement.

## II.

■ Parties to a contract have the right, under New York law, to specify within a contract the damages to be paid in the event of a breach, so long as such a clause is neither unconscionable nor contrary to public policy. *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 393 N.Y.S.2d 365, 368–69, 361 N.E.2d 1015, 1017–18 (1977); *Mosler Safe Co. v. Maiden Lane Safe Deposit Co.*, 199 N.Y. 479, 485, 93 N.E. 81, 83 (1910). If the clause "is intended by the parties to operate in lieu of performance, it will be deemed a liquidated damages clause and may be enforced by the courts.... If such a clause is intended to operate as a means to compel performance, it will be deemed a penalty and will not be enforced." *Brecher v. Laikin*, 430 F.Supp. 103, 106 (S.D.N.Y.1977).

Although freedom of contract is at the core of contract law, the "freedom to contract does not embrace the freedom to punish, even by contract." *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 360, 386 N.Y. S.2d 831, 834, 353 N.E.2d 793, 796 (1976). A clause setting damages much higher than the estimated actual loss does not provide fair compensation, but secures "performance by the compulsion of the very disproportion. A promisor would be compelled, out of fear of economic devastation, to continue performance and his promisee, in the event of default, would reap a windfall well above actual harm sustained." *Truck Rent–A–Center*, 41 N.Y.2d at 424, 393 N.Y.S.2d at 369, 361 N.E.2d at 1018.

■ Thus, parties may agree upon damages in advance when the liquidated amount "is a reasonable measure of the anticipated probable harm," and the probable actual loss from a breach is difficult to estimate or ascertain at the time the contract is executed. *Truck Rent–A–Center*, 41 N.Y.2d at 425, 393 N.Y.S.2d at 369, 361 N.E.2d at 1018. *See City of Rye v. Public Service Mut. Ins. Co.*, 34 N.Y.2d 470, 473, 358 N.Y.S.2d 391, 393, 315 N.E.2d 458, 459 (1974); *Vernitron Corp. v. CF 48 Associates*, 104 A.D.2d 409, 409, 478 N.Y.S.2d 933, 934 (Second Dep't 1984). The reasonableness of the liquidated damages and the certainty of actual damages both must be measured as of the time the parties enter the contract, not as of the time of the breach. *Vernitron*, 104 A.D.2d at 409, 478 N.Y.S.2d at 934. When a court sustains a liquidated damages clause, the measure of damages for a breach will be "the sum in the clause, no more, no less"; when a court strikes the clause as a penalty, the prevailing party is limited to actual damages proved. *Brecher*, 430 F.Supp. at 106.

■ Whether a provision is an enforceable liquidated damages clause or an unenforceable penalty is a matter of law to be decided by the court. *Vernitron*, 478 N.Y. S.2d at 934. Courts have tended, in doubtful cases, "to favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated dam-

ages, even where the parties have styled it liquidated damages rather than a penalty." *City of New York v. B & M Ferry Co.*, 238 N.Y. 52, 56, 143 N.E. 788 (1924).[1] Nevertheless, defendant has the burden of proving that the liquidated damage clause to which it freely contracted is, in fact, a penalty. *See P.J. Carlin Construction Co. v. City of New York*, 59 A.D.2d 847, 848, 399 N.Y.S.2d 13, 14 (First Dep't 1977); *Harbor Island Spa, Inc. v. Norwegian America Line A/S*, 314 F.Supp. 471, 474 (S.D.N.Y.1970).

■ Commodore argues here that § 9(a) of Rattigan's employment contract operates as a penalty because it bestows upon Rattigan a sum disproportionate to any conceivable loss from the agreement's breach, and because it provides a windfall to Rattigan regardless of whether the breach is trivial or serious. Commodore asserts that if Rattigan involuntarily resigned immediately after signing the contract, and received the damages provided in the contract, he would be in a better position than if he continued to work for Commodore for the entire contract term. This argument technically is correct. Although the contract provides that 20 percent of Rattigan's 500,000 shares will vest free of restrictions each year, § 9(a) provides for accelerated vesting of all the shares free of restrictions. More important, § 9(a) does not require that the accelerated salary and bonuses be discounted to present value; thus, Rattigan would receive more under § 9(a)'s acceleration of certain benefits than he would receive under those benefits provisions in the contract.

Nonetheless, the liquidated damage provision is not "grossly disproportionate" to what the parties reasonably could estimate

as the anticipated probable loss from breach at the time they signed the contract. First, Rattigan would have received other forms of compensation under the contract not conferred by the liquidated damages provision, but which might be taken into account in a calculation of actual damages for breach. For example, § 9(a) gives Rattigan accelerated payment of the two minimum bonuses of $200,000 that are guaranteed under § 4 of the contract, but Rattigan could well have received more than these two *minimum* bonuses during his tenure as Commodore's President and CEO. Further, § 5 of the contract entitles Rattigan to benefits such as medical, dental, accident and life insurance, an option to purchase a $1 million paid life insurance policy for the term of the employment period, the use of a company car, payment for club memberships, reimbursement for relocation expenses and suitable living accommodations for Rattigan and his family pending relocation. Further, § 9(a) provides for an acceleration of his salary through May 31, 1991, while his employment contract was to end July 1, 1991; his salary in that one missing month would have been at least $33,333.

A provision such as the one at issue constitutes a penalty if "the amount fixed is plainly or grossly disproportionate to the probable loss." *Truck Rent–A–Center*, 41 N.Y.2d at 425, 393 N.Y.S.2d at 369, 361 N.E.2d at 1018. One must determine gross disproportionality by looking at the contract when it was made, and not at the time of the breach. But Commodore's argument that Rattigan would be overcompensated if he "involuntarily resigned" the first day after signing the contract glosses

**1.** The Appellate Division, Second Department, has concluded that courts should resolve any reasonable doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause in favor of a construction which holds the provision to be a penalty. *Willner v. Willner*, 145 A.D.2d 236, 240–41, 538 N.Y.S.2d 599, 602 (Second Dep't 1989); *Vernitron*, 104 A.D.2d at 409–410, 478 N.Y.S.2d at 934; *National Telecanvass Associates, Ltd. v. Smith*, 98 A.D.2d 796, 798, 470 N.Y.S.2d 22, 24 (Second Dep't 1983). Although the New York Court of Appeals in *B & M Ferry* described the tendency

of courts to favor penalties in case of doubt, I do not find the reasons for such a presumption to be obvious. Indeed, to the extent that courts' refusal to enforce penalty clauses is an exception to freedom of contract, one would think that any presumption should be in favor of enforceability rather than against it. In any event, as discussed below, the question of whether the clause at issue provides for proper liquidated damages or a penalty is resolvable without any perceptible doubt, so there is no need to resort to the presumption, assuming it applies in doubtful cases.

over the fact that "involuntary resignation" under the contract is not triggered by factors within Rattigan's control, but can result only from the equivalent of a breach by Commodore; in such a situation, absent § 9(a), a court would award Rattigan actual damages equal to the present value of his salary, bonus and benefits for the five years he was to work under the contract, minus what he has earned and could reasonably expect to earn somewhere else during the unexpired term of his contract. *Cornell v. T.V. Development Corp.*, 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966).

If Rattigan "involuntarily resigned" the first day and tried to mitigate damages but could not find another job, the only benefit Rattigan would receive by recovering the sum awarded under § 9(a) rather than damages computed by the court would arise from the absence of a present value discount in § 9(a). Although the difference between Rattigan's salary discounted to its present value and his salary accelerated by § 9(a) and paid in a lump sum is quite substantial,[2] the clause provides for no more than the acceleration of the amount due Rattigan under the contract. Acceleration provisions such as this one, common in loan and lease agreements, occasionally are denied enforcement as penalties, but in "the vast majority of instances ... these clauses have been enforced at law in accordance with their terms." *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 577, 415 N.Y.S.2d 800, 803, 389 N.E.2d 113, 116 (1979).

Courts have held such an acceleration clause to be a penalty if it can be triggered for any breach of the contract's terms, whether serious or trivial, because under such a contract the amount lost by the breaching party for non-compliance with a minor term is disproportionate to any harm that would accrue to the non-breaching party. *See Seidlitz v. Auerbach*, 230 N.Y. 167, 129 N.E. 461 (1920); *Fifty States Management*, 46 N.Y.2d at 577–78, 415 N.Y.S.2d at 803, 389 N.E.2d at 116; *Brecher*, 430 F.Supp. at 106. Defendant here argues that because acceleration of Rattigan's benefits could be triggered by any of the events listed in § 9(a), Rattigan "could reap the benefit of the payment provisions of section 9(a) for events arising under the contract ranging from the critical to the trivial." (Def. Mem. at 16) An examination of the events listed, however, reveals that § 9(a) is not triggered by insubstantial breaches, but instead defines involuntary resignation by the occurrence of material changes in Rattigan's circumstances at the company that would go to the heart of Rattigan's duties.

The very fact that § 9 sets forth the circumstances which will trigger the acceleration provision illustrates that the provision is not triggered by a breach of simply any term in the employment agreement, but rather by conditions agreed upon ahead of time by the parties as constituting material changes that might force Rattigan to leave the company. Section 9(c) defines circumstances in which Rattigan's employment will be deemed involuntary:

"(i) a material diminution or material change in the character of Rattigan's duties and responsibilities ... or a material change in the location where such duties and responsibilities are to be performed beyond a one hundred (100) mile radius of major metropolitan cities in the Northeast Corridor....

(ii) a dissolution or liquidation of CIL or the execution by CIL of a definitive agreement to merge, amalgamate or consolidate with or into any other corporation or otherwise dispose of substantially all of its assets;

(iii) five (5%) percent or more of the outstanding voting shares of CIL is acquired by any person or group ... and as a result thereof the individuals who, as of the date of commencement of the Employment Period or as of the date of such

---

**2.** The present value of Rattigan's $400,000 per year salary for 5 years on his first day of employment, assuming payment once per month and an interest rate of 9%, is approximately $1,619,041, while the acceleration of the $400,000 per year for 5 years would give Rattigan $2 million. The formula for this is $PV = C(1/r - 1/r(1 + r)^t)$. PV is present value; C is the amount per pay period; r is the rate of interest, and t is the number of pay periods.

acquisition of voting shares were members of the Board of Directors of CIL cease for any reason to constitute at least a majority thereof. . . .

(iv) there shall be a change in the Principal Shareholder of CIL. . . ."

Not only did both parties agree upon these conditions as events important enough to compel Rattigan to leave against his will, but the clause on its face describes objectively material changes. Commodore argues that events such as the company's move to a location beyond the 100 mile radius of a major Northeastern city or the death of the principal stockholder are relatively minor occurrences that nevertheless would trigger acceleration of Rattigan's benefits. The location provision, however, describes a *"material* change in the location ... beyond a one hundred (100) mile radius,"* (emphasis added) while a change in the principal shareholder is an event that could have a radical impact upon Rattigan's duties as President and CEO of the company. The provision for damages in Rattigan's employment contract thus does not appear to be so "grossly disproportionate" to a foreseeable injury that it constitutes a penalty.

Further, the provision at issue satisfies the second prong of the liquidated damages test—that the actual loss from breach be difficult to ascertain at the time the contract is executed—because of the uncertainties that would accompany a calculation of damages under this particular contract. As discussed *supra,* page 171, actual damages are calculated by taking the present value of earnings under the contract minus what the employee has earned or expects to earn at another job during the unexpired contract period. Rattigan's employment agreement, however, provides for many different forms of compensation aside from his salary, which a court or jury calculating actual damages would take into consideration. Further, neither party could know ahead of time the extent to which Rattigan would be able to mitigate damages by working at another job, especially if Rattigan's resignation is "involuntary" and taints his reputation in his field. As Judge Greenfield explained in *Boyle v. Petrie*

*Stores Corp.,* 136 Misc.2d 380, 391, 518 N.Y.S.2d 854, 861 (S.Ct. N.Y. Cty.1985), "the parties could reasonably agree that instead of litigating the question of damages after the event, which would leave uncertainties such as the employee's efforts to mitigate damages by securing other employment, and the question as to how long the other employment might last, and whether the benefits were comparable, they could reasonably agree beforehand as to what damages would be payable." *Boyle,* 136 Misc.2d at 391, 518 N.Y.S.2d at 861.

Finally, both parties to the contract were sophisticated, were represented by able counsel, and negotiated the contract at arms length. "This is a factor to be taken into consideration in determining whether one side is not exacting an unconscionable penalty." *Boyle,* 136 Misc.2d at 391, 518 N.Y.S.2d at 861. If anything, Commodore, a large corporation, wielded greater bargaining power while negotiating the contract with this single individual. Notably, Commodore has agreed to strikingly similar acceleration provisions in employment contracts with other top Commodore executives, including Henri Rubin, the Executive Vice President and Chief Operating Officer (Pl. Exh. 5) and Mehdi Ali, the current President. (Pl. Exh. 6) The recurrence of the acceleration provision in other contracts undermines Commodore's argument that the provision is an unenforceable penalty. It seems far more likely that the clause reflects Commodore's recognition of the difficulties inherent in a damage calculation if the specified events occur than it does that three executives independently extracted an unconscionable penalty from their employer. It also highlights Commodore's recognition that material changes in the company or in the executives' duties could result in significant damage to the executives, and that the executives would consider security against such damage to be crucial.

Section 9(a) of Rattigan's employment contract thus is not a penalty: the sum provided in that clause is not disproportionate to the damages which could be in-

curred, actual loss from a breach was difficult to ascertain and the clause does not operate as a means of coercing performance by either party.

\* \* \* \* \* \*

For the above reasons, defendant's motion for a determination that § 9(a) of the employment contract constitutes an unenforceable penalty is denied.

SO ORDERED.