**475342 ALBERTA, LTD., Plaintiff,**

v.

**Charles Rease BRALEY, III, et al., Defendants.**

**Civil Action No. 95–0016–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

July 1, 1996.

---

Attison L. Barnes, III, Ronald L. Lord, Gardner, Carton & Douglas, Washington, DC, for 475342 Alberta Ltd.

John Walter Zunka, Taylor & Zunka, Ltd., Charlottesville, VA, Steven William Pearson, Hazel & Thomas, Richmond, VA, John A. Burlingame, Hazel & Thomas, P.C., Alexandria, VA, Ridley M. Whitaker, New York City, for Charles Rease Braley, III.

John Walter Zunka, Taylor & Zunka, Ltd., Charlottesville, VA, Patrick A. O'Hare, Steven William Pearson, Hazel & Thomas, P.C., Richmond, VA, John A. Burlingame, Hazel & Thomas, P.C., Alexandria, VA, Ridley M. Whitaker, New York City, for Virginia Cellular, Inc.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This matter comes before the court upon defendants' objections to a Report and Recommendation issued by United States Magistrate Judge B. Waugh Crigler on January 31, 1996. The Magistrate recommended that this court grant summary judgment to plaintiff and deny summary judgment to defendants. For the reasons stated below, the court will decline to adopt the Magistrate's recommendation and grant summary judgment in favor of defendants and deny plaintiff's motion for summary judgment.

## I.

Plaintiff, 475342, Alberta, LTD. is a Canadian corporation who is the successor in interest to NovAtel Communications, Inc. ("NovAtel"), also a Canadian corporation. Defendants in this case are Charles Rease Braley, III ("Braley") and Virginia Cellular, Inc., a company of which Braley is the 100% shareholder and the assignee of Braley's rights.

In the 1980s, the FCC conducted lotteries to award rights to construct and operate cellular phones systems in Rural Service Areas throughout the United States. The FCC required applicants to present proof of financial backing from a qualified lender or to establish that the applicants had sufficient personal resources to construct and operate the phone systems for one year. 47 C.F.R. 22.917(c) (1988). On December 7, 1988, Braley obtained a financial commitment letter ("1988 letter") from NovAtel, and submitted it to the Federal Communications Commission ("FCC") as proof that he had requisite financial backing to construct and operate a cellular phone system for one year. This dispute arises from the 1988 letter.

Pursuant to the 1988 letter, NovAtel agreed to provide Braley with a maximum loan of $3,000,000, the estimated cost of construction and operation of the phone system for one year, in exchange for a recited consideration of $1.00 ("Commitment Fee"). The terms of the loan were introduced with the following opening: "As presently envisioned...." 1988 letter ¶ 4. Further, the letter equivocated that the parties "must enter into all necessary agreements reasonably required by NovAtel and typically required by NovAtel in connection with similar transactions...." Id. ¶ 6 (listing various agreements). The clause around which this litigation primarily revolves included a liquidated damages clause, stating as follows:

The system[s] to be constructed using the proceeds of the loan we have committed to providing herein must utilize cellular system equipment and ancillary equipment and service provided by NovAtel. Should you refer to this commitment in any filing or application with the FCC in connection with one of the proposed systems listed on Schedule A [attached to this letter], and fail to purchase NovAtel equipment in connection with the construction of a system listed on Schedule A, there shall become immediately due and payable from [Braley] to NovAtel a fee of U.S. $100,000 in liquidated damages.

*Id.* ¶ 5.

The terms on which the above-referenced equipment was to be purchased were contained in one lone sentence in which NovAtel "agree[d] to supply the equipment at a price no higher than that charged by NovAtel to its most-favoured customer, other than a subsidiary of NovAtel, for like quantities purchased under like terms and conditions." *Id.* at p. 3. The letter closed by thanking Braley for his "consideration of NovAtel as [his] equipment supplier...." *Id.*

Subsequently, Braley received two more letters from NovAtel, one on December 5, 1989, which renewed the terms of the 1988 letter, and one on July 25, 1990, which purported to change the terms of the loan (for instance, the loan amount was increased and the calculation of the interest rate was modified) and added other conditions to the loan agreement (for instance, Braley was now to submit a viable business plan before he could be eligible for the loan). The 1989 letter again thanked Braley for his "consideration of NovAtel as [his] equipment supplier," and the 1990 letter contained the same preface as did the 1988 letter ("As presently envisioned ..."). "Major conditions relating to the loan" were, by the 1990 letter, expressly left undecided.

Braley included the 1988 letter from NovAtel in his application with the FCC, and the FCC awarded Braley a permit to construct and operate a cellular telephone system. Instead of obtaining a loan and equipment from NovAtel, however, Braley secured a loan ($5,900,000) and purchased equipment from one of NovAtel's competitors, Motorola. Apparently Braley had mistaken the amount of financing necessary for the construction and operation of the phone system, which was approximately double the amount ($3,000,000) he had originally envisioned. When negotiations between Braley and NovAtel failed—essentially because Braley

requested more money and NovAtel was either unwilling or unable to provide it—and Braley declined to purchase NovAtel's equipment and refused to pay $100,000 in liquidated damages, this suit followed. Plaintiff advanced two theories for recovery: breach of contract and unjust enrichment.

The former theory has been twice rejected by a district court sitting in Oklahoma, interpreting an identical liquidated damages provision contained in financial commitment letters upon which plaintiff relied to bring suits against other defendants. *475342 Alberta, LTD. v. Dataphon Cellular Partnership, ET AL.*, No. 95–C–174–BU (N.D.Okla. Sept. 29, 1995); *475342 Alberta, LTD. v. Constitution Cellular*, No. 95–C–175–BU, 1995 WL 877500 (N.D.Okla. Sept. 28, 1995).

## II.

The Magistrate ruled in NovAtel's favor, reasoning that "the commitment was a valuable asset to Braley.... This resource was something that did not come without price, and the price was Braley's agreement that if he were to use the commitment in connection with an FCC licensure application, he either would buy equipment from NovAtel or pay for the use of the commitment letter." Report & Recommendation at 5 (Jan. 31, 1995). The Magistrate rejected arguments that plaintiff was collaterally estopped by *Dataphon* and *Constitution Cellular*, because he found that the 1988 letter constituted a financial commitment, binding under New York law (which the parties agree governs here), relying on *Murphy v. Empire of America, FSA*, 746 F.2d 931 (2d Cir.1984), in so finding.[1]

## III.

■ Without doubt, financial commitments constitute binding contracts under New York law. *See, e.g., Teachers Insurance & Annuity Association v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y.1987). For an enforceable agreement to exist, "it is only necessary that the borrower and lender concur

as to the essential terms of the ... transaction." *Murphy*, 746 F.2d at 934. Defendants make no argument to the contrary. They simply dispute that the 1988 letter contained the essential terms of the transaction, without which a financial commitment cannot be enforced. Defendants maintain that the 1988 letter, together with the letters that followed, demonstrate that the parties had not reached an agreement on the basic terms on which the loan transaction would be offered and did not intend to enter into a binding contract. Specifically, they direct the court's attention to the precatory language contained in all three letters and point to the modifications in the third letter. Defendants urge that thanking Braley for his "consideration of NovAtel as his equipment supplier" manifests recognition on NovAtel's part that Braley may or may not oblige NovAtel by purchasing its equipment. Further, they contend that the phrase "As presently envisioned ..." (preceding the loan terms) implies that NovAtel anticipated that changes might have to be made to the basic terms of the loan. Finally, defendants argue that the various alterations in the 1990 letter demonstrate that the parties were engaged in ongoing negotiations inconsistent with an intent to be bound.

Although the court is inclined to agree with defendants that Braley and NovAtel had not reached a meeting of the minds on the essential terms of the loan and so had not entered into a binding financial commitment under New York law, the court will assume otherwise for the sake of argument. Even if the parties had reached an agreement, the liquidated damages provision cannot be enforced against defendants because (A) the doctrine of collateral estoppel bars plaintiff from arguing that the 1988 letter is anything more than an agreement to agree; (B) liquidated damages cannot be collected from defendants because no valid contract governing the purchase of equipment existed between the parties; and (C) the liquidated damages provision does not serve to approximate actu-

---

1. The Magistrate dismissed plaintiff's unjust enrichment claim, because he found in plaintiff's favor on the contract claim. Plaintiff does not attack the Magistrate's Report and Recommen- dation on this point. Nor does plaintiff take issue with defendants' contention that plaintiff's unjust enrichment claim is time-barred under Va.Code Ann. § 8.01–246(2).

al damages, but rather constitutes an unenforceable penalty under New York law.

## A.

The court in *Dataphon* and *Constitutional Cellular* assumed that both Oklahoma and California law governed because of uncertainty regarding which state's law applied. The court refused to permit plaintiff to recover on the financial commitment letters it proffered, but not because it found that financial commitment letters were unenforceable under Oklahoma or California law. Rather the court held that "[f]or an enforceable contract to exist, the parties must agree to its essential and material terms. With the absence of an agreement on so important a specification as the basic terms of a loan agreement, the Court finds that the letter agreement was an unenforceable 'agreement to agree.'" *Dataphon,* No. 95–C–174–BU, at 8 (citing cases); *Constitutional Cellular,* No. 95–C–175–BU, at 8 (citing cases).[2] The court in both cases relied upon various contractual provisions whose language precisely mirrors that found in the 1988 letter. *Id.* at 7–8 (citing the exact language found in ¶¶ 4, 6 quoted above).

■ Collateral estoppel may only be invoked if (1) the issue in the first action is the same as that presented by the second action; (2) the issue was actually litigated and determined in the previous action; and (3) the determination was essential to the prior judgment. *Metcalfe Brothers, Inc. v. American Mutual Liability Insurance Co.* 484 F.Supp. 826, 828 (W.D.Va.1980). The issue in *Dataphon* and *Constitutional Cellular* is identical to that before this court: is the agreement between the parties an unenforceable agreement to agree? The pertinent contractual language in the 1988 letter does not vary even by one word from the language that the other court interpreted, and neither Oklahoma, California, nor New York law recognizes "contracts" that do not rise beyond agreements to agree. Clearly, the issue was

actually litigated and determined by *Dataphon* and *Constitutional Cellular,* and in both cases the court rested its holding, in part, on its conclusion that the financial commitment letters before it were mere agreements to agree. Therefore, plaintiff in this case is collaterally estopped to argue that NovAtel's agreement with Braley is anything but an agreement to agree.

## B.

■ Even if the bar of collateral estoppel were absent from this case, plaintiff still could not recover against defendants regardless whether the loan agreement between NovAtel and Braley constituted a binding contract under New York law. This is because liability supposedly attaches not from Braley's refusal to accept a loan from NovAtel, but from Braley's failure to purchase NovAtel's equipment. The 1988 letter, however, contains not a hint of what type, quantity, or at what price Braley was to purchase NovAtel's equipment, beyond the vague promise that Braley would be charged no higher a price than NovAtel's most-favored customer paid for similar equipment. As such, the "contract" is a quintessential agreement to agree. It squarely raises the question of what a court would have to do if presented with a demand by Braley to purchase 100 of NovAtel's widgets at $50/widget and an unyielding counteroffer by NovAtel to sell 200 of its gadgets at $75/gadget. Who has breached the contract then? Is the court to determine the fair market value, the quantity, and the type of equipment to be exchanged? That, of course, would be tantamount to a judicially authored contract. Neither the Uniform Commercial Code (governing the sale of goods) nor, for that matter, general New York contract law permits courts to engage in such rescue attempts. U.C.C. § 2–201 off. cmt. 1 (McKinney 1993) (stating that quantity of goods to be exchanged must be specified in a contract for

2. In ruling against plaintiff, the district court in Oklahoma also rested its holding on the finding that advancement of loan proceeds was a condition precedent to performance, and this condition had not been fulfilled. Because of factual variations between the cases before the district court in Oklahoma and the case at bar, this court does not rely on this aspect of *Dataphon* and *Constitutional Cellular* to reach the conclusion that defendants may invoke the bar of collateral estoppel.

the sale of goods); *Joseph Martin, Jr. Delicatessen v. Schumacher*, 52 N.Y.2d 105, 107, 417 N.E.2d 541, 543, 436 N.Y.S.2d 247, 249 (1981) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."). Thus, the agreement that Braley purchase NovAtel's equipment cannot be enforced under New York law. Because no valid contract governing the condition that must be fulfilled to escape liability exists, Braley cannot be held liable for $100,000 in liquidated damages.

### C.

■ Yet another problem with the liquidated damages provision is that plaintiff has failed to allege any injury suffered by it as a result of Braley's failure to borrow money from NovAtel or his refusal to purchase its equipment. Instead, plaintiff recites to the court a selective summary of New York law, under which a liquidated damages provision is presumed valid and will only be invalidated if the challenging party, on whom the burden of proof rests, shows the provision to be so exorbitant as to be punitive. Plaintiff relies primarily on *Rattigan v. Commodore International Limited*, 739 F.Supp. 167 (S.D.N.Y. 1990), which, plaintiff fails to mention, contains a cautionary note. It explains that "[a]lthough freedom of contract is at the core of contract law, the 'freedom to contract does not embrace the freedom to punish, even by contract.'" *Id.* at 169 (citations omitted). *Rattigan* further qualifies the parties' right to agree to a liquidated damages provision by limiting it to circumstances where "the liquidated amount 'is a reasonable measure of the anticipated harm,' and the probable actual loss from a breach is difficult to estimate or ascertain at the time the contract is executed." *Id.* (citations omitted). When in doubt, "[c]ourts have tended … 'to favor a construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty.'" *Id.* at 169–70 (citations omitted).

Plaintiff attempts to skirt the law that disfavors it by insisting that defendants have failed to meet their burden of proving the liquidated damages clause to be a penalty provision. But burden of proof does not extend so far as to absolve plaintiff of any responsibility to plead some type of injury; to hold otherwise would be to place upon defendants the duty of pinpointing the source and amount of potential loss experienced by plaintiff only to refute their own findings. Here defendants have met the only burden that could be reasonably expected of them; they have attempted to identify possible harms plaintiff could have suffered and have offered arguments explaining why it is improbable that plaintiff actually suffered any such harms. With no response from plaintiff on this matter—aside from its unsupported assertion that because the liquidated damages provision is "only" 3.3% of the loan agreement it should be enforced—the court can only conclude that the liquidated damages provision attempts to impose a penalty on Braley for failing to abide by the "contract" between the parties. At the very least, this is a doubtful case, and under New York law should be construed as an unenforceable penalty provision.

### IV.

Plaintiff also seeks to recover attorney's fees pursuant to an indemnity clause in the 1988 letter. Defendants object to the Magistrate's apparent willingness to award fees to plaintiff. The clause upon which plaintiff relies is generally construed to entitle an indemnitee to recover fees against an indemnitor only in litigation involving third parties. The New York Court of Appeals, interpreting a provision very close to that before the court, rejected a claim that the plaintiff-indemnitee could recover attorney's fees from the defendant-indemnitor, reasoning as follows:

> [An indemnity agreement] must be strictly construed to avoid reading into it a duty that the parties did not intend to be assumed. The promise should not be formed unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in the litigation between them is contrary to the well-under-

stood rule that the parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

*Hooper Associates, Ltd. v. AGS Computers, Inc.* 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905, 549 N.Y.S.2d 365, 367 (1989);[3] see *Bourne Co. v. MPL Communications, Inc.,* 751 F.Supp. 55 (S.D.N.Y.1990) (citing *Hooper*).

■ Notwithstanding the unsupportable and misleading version of *Hooper* which plaintiff offers the court—that the case involved a lawsuit between a plaintiff and a third party, after which the plaintiff attempted to establish the right of indemnification between itself and the defendant, and for this latter lawsuit plaintiff could not recover—*Hooper* quite clearly compels the conclusion that plaintiff cannot recover attorney's fees from defendants in this case, because the indemnity clause does not meet *Hooper*'s "unmistakably clear" language requirement.

## V.

For the reasons stated above, summary judgment shall be granted to defendants and denied plaintiffs. Plaintiffs are also denied recovery of attorney's fees.

---

**3.** The indemnity clause in the present case provides as follows:

[Braley] agree[s] to indemnify and hold NovAtel harmless, and to reimburse NovAtel fully for any liability incurred by NovAtel arising out of any inquiry, dispute, litigation or claim in connection with, or in any way related to, directly or indirectly, whether instituted by [Braley] or another, this Commitment or the terms or obligations of NovAtel hereunder, including reasonable attorneys' fees and legal costs related thereto.

The indemnity clause in *Hooper* obligated the defendant to "indemnify and hold harmless [plaintiff] . . . from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" as well as those arising from "any breach by [defendant] of any express or implied warranty hereunder and any express representation or provision thereof." 74 N.Y.2d at 490 n. 1, 548 N.E.2d at 904 n. 1, 549 N.Y.S.2d at 366 n. 1. The court found that none of these was "exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." 74 N.Y.2d at 492, 548 N.E.2d at 905, 549 N.Y.S.2d at 367.

The same is true in the present case.