**WELLS FARGO BANK NORTHWEST, N.A., Plaintiff,**

v.

**TACA INTERNATIONAL AIRLINES, S.A. and JHM Cargo Express, S.A., Defendants.**

**Taca International Airlines, S.A. and JHM Cargo Express, S.A., Third-party plaintiffs,**

v.

**C–S Aviation Services, Inc., Third-party defendant.**

**No. 01 Civ. 11484(GEL).**

United States District Court, S.D. New York.

May 20, 2003.

Benjamin R. Nagin, Alan M. Unger, Sidley Austin Brown & Wood LLP, New York City, for Plaintiff Wells Fargo Bank Northwest, N.A.

Michael P. Socarras, Simon Miller, Greenberg Traurig, LLP, New York City, for Defendants Taca International Airlines, S.A. and JHM Cargo Express, S.A.

## OPINION AND ORDER

LYNCH, District Judge.

This dispute involves five aircraft leased to Taca International Airlines ("Taca"), a Salvadoran airline company, by Wells Fargo Bank Northwest ("Wells Fargo"), a United States bank acting solely as owner-trustee under the lease agreements ("Leases"). Wells Fargo brought this lawsuit for payment of rent due under the Leases. On September 25, 2002, the Court granted Wells Fargo's motion for partial summary judgment on liability and partial damages. *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F.Supp.2d 352 (S.D.N.Y.2002). Wells Fargo now moves for summary judgment on damages. Because the liquidated damages provisions of the lease agreements are clearly enforceable under New York law, and because Wells Fargo's calculation of those damages involves no genuine issue of material fact, the motion will be granted.

## I. *Legal Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The non-moving party cannot defeat summary judgment by offering merely speculative arguments in opposition. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116–17 (2d Cir.1988). Accordingly, to defeat summary judgment, the opposing party must set forth "concrete particulars" showing the need for a trial. *R.G. Group. Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## II. *Enforceability of The Liquidated Damages Clause*

The Lease Agreements at issue here provide that, in the event of a default by lessee Taca, the lessor Wells Fargo "shall be entitled automatically ... to exercise any of the ... remedies" contained in Section 26 of the Lease Agreements "as the Lessor in its sole discretion shall elect." (*E.g.*, Walsh Affid., Ex. 1 ("Lease Agreement") § 26, at 75.) Among the remedies available is payment of liquidated damages according to a formula contained in § 26(c). (*Id.* at 76.) That formula entitles Wells Fargo to (i) unpaid rent up to the time it makes a demand for liquidated damages, plus (ii) accrued interest, plus

(iii) any amount by which the rent for the remainder of the lease period exceeds the "Fair Market Rental Value" of the aircraft, discounted to the payment date. Taca claims that this liquidated damages provision is unenforceable, and that it is therefore entitled to discovery on the issue of actual damages.

■ As an initial matter, Taca claims in a footnote that "The burden is on Lessors to present evidence ... that Section 26(c) is enforceable." (D. Mem. at 6 n. 1.) But the case defendant cites says nothing of the sort, and other cases clearly establish the opposite. *See, e.g., Rattigan v. Commodore Intern. Ltd.,* 739 F.Supp. 167, 169–70 (S.D.N.Y.1990). Furthermore, the enforceability of a liquidated damages provision is a legal issue not requiring an evidentiary showing. *Id.*

■ New York has adopted Article 2A of the Uniform Commercial Code, which "applies to any transaction ... that creates a 'lease." N.Y. U.C.C. § 2A–102.[1] Under the U.C.C., damages "may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default." § 2A–504(1). Taca's first substantive attack on the liquidated damages provision here is based on a concluding paragraph in § 26 stating that each of the possible remedies therein, including liquidated damages, "shall be cumulative and in addition to any other remedy referred to." (Lease Agreement § 26, at 78.) If this indeed meant that Wells Fargo could collect both the specified liquidated damages and actual damages, Taca might be correct, since the U.C.C. bars

multiple remedies when "the effect is to put the lessor in a better position than it would have been in had the lessee fully performed under the lease," U.C.C. § 2A–523, Official Cmt., ¶ 4.[2] But Taca omits any reference to an important condition placed on the Lease Agreements' cumulation provision: The remedies are to be cumulative only "to the extent permissible ... under applicable Law." (Lease Agreement § 26, at 78.) And the liquidated damages provision itself states that the remedy is "in lieu of Base Rent." (*Id.* at 76.) Since the "applicable law" here is Article 2A of the U.C.C., no forbidden cumulation is contemplated.

■ Taca next claims that merely by providing for actual damages as an *alternative* to liquidated damages, the liquidated damages clause is rendered unenforceable. It cites five cases which so hold. (D. Mem. at 8.) However, none of those cases involve application of the U.C.C., and, as Wells Fargo points out, Article 2A expressly permits "unrestricted selection" of a remedy. U.C.C. § 2A–501, Official Cmt. ¶ 4.

■ Taca next claims that Wells Fargo cannot claim liquidated damages now because this Court's "prior award of actual damages ... is pending for review in the Second Circuit." (D. Mem. at 10.) However, the Partial Summary Judgment Motion that this Court granted sought only "presently ascertainable damages to date," and clearly contemplated a calculation of full damages, according to § 26 of the Lease Agreements, from which could be subtracted any payments Taca made to

---

1. New York law applies to the claims here for the same reasons it applied to the claims in Wells Fargo's Motion for Partial Summary Judgment. *Wells Fargo,* 247 F.Supp.2d at 358 n. 9.

2. However, the cases cited by Taca are inapposite: They all involved contracts where liquidated damages was an *alternative* to actual damages or other remedies, and therefore are relevant only to Taca's second argument, addressed below.

Wells Fargo in satisfaction of the earlier award. The Partial Judgment itself makes no reference to any specific amount of damages. (Nagin Affid. Ex. 4.) Thus in no sense was "this case . . . about actual damages" at that stage. (D.Mem.10.) Nor can Taca claim prejudice arising from the pendency of its own appeal, which it chose to file notwithstanding the fact that the issue of full damages was still pending before this Court.

■ Taca also argues that Wells Fargo's attempt to "impos[e] a liquidated damages determination upon a ruling of liability for actual damages" has deprived it of the "opportunity . . . to show that [a June 21, 2001,] Letter Agreement modified the term 'Base Rent' in Section 26(c) in a manner . . . preclud[ing]" summary judgment. (D.Mem.12.) Whatever Taca means by this, it has had full opportunity, during briefing of either the instant motion for liquidated damages or the prior motion for "presently ascertainable damages," to develop any arguments it had regarding the interpretation of "Base Rent" in the Lease Agreements. Furthermore, the Court's earlier Order held that "nothing in [the Letter Agreement] remotely . . . cancels Wells Fargo's absolute right to collect the rescheduled rent payments." 247 F.Supp.2d at 362. Since the liquidated damages formula involves the agreed-upon base rent, and it is the law of the case that Wells Fargo has the right to collect that rent notwithstanding the Letter Agree-

ment, re-interpretation of the "Base Rent" is foreclosed.

■ Finally, Taca claims that the liquidated damages provision is unenforceable because it "is not a reasonable estimate of actual damages." (D. Mem. at 12.) Its argument centers on the fact that the set-off for Fair Market Rental Value is applied, according to § 26(c), only from the date that Wells Fargo demands the liquidated damages, rather than from the date it repossessed the plane, which, in this case, was six to twelve months earlier than the demand date. (D. Mem. at 2, 13.) The ability of Wells Fargo to choose the demand date operates, in Taca's view, to give Wells Fargo "unbridled discretion" to "maximize their recovery."[3]

However, Taca cites no authority for the proposition that a liquidated damages clause that permits a plaintiff some discretion in the amount of recovery is rendered unenforceable. The standard, under the U.C.C., is whether the liquidated damage calculation is "reasonable in light of the . . . anticipated harm caused by the default or other act or omission." U.C.C. § 2A–504(1). It was reasonable for the parties to anticipate that Wells Fargo would not be able to re-lease the aircraft at a fair market rate immediately upon repossessing the aircraft, and thus "some extension of the rental period is appropriate." *Interpool, Ltd. v. Central Gulf Lines, Inc.*, Dkt. No. 81 Civ. 6454(PNL), 1983 WL 584, at *7 (S.D.N.Y. July 30, 1983). Taca fails

---

**3.** Wells Fargo misconstrues Taca's argument here in claiming that "mitigation becomes irrelevant" in the context of a liquidated damages award. It is true that once liquidated damages are awarded pursuant to a valid contract provision, the plaintiff need not make efforts to mitigate those damages and subtract the mitigation from the liquidated damages award. *Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 271 A.D.2d 636, 706 N.Y.S.2d 724, 727 (2d Dept.2000) ("Miti-

gation of damages is not relevant when there is a valid liquidated damages clause."). Taca's argument, however, goes to the validity of the clause, namely, the effect of Wells Fargo's absolute discretion to unreasonably delay the making of a demand on the amount of damages it can claim. *See id.* ("[I]n the event that the liquidated damages clause . . . is an unenforceable penalty . . . the mitigation defense [is] relevant.").

·

to present any reason, and this Court sees none, why the extension contemplated by the parties or actually used by Wells Fargo here was so unreasonable as to render the liquidated damages provision unenforceable. Taca relies entirely on the fact that Wells Fargo was theoretically free to delay its demand for as long as it pleased, but four of the cases it cites involve lease provisions that permitted recovery of the "full amount of unaccrued rent" without *any* setoff for mitigation. (D. Mem. at 15 (citing cases).) Here, the Agreements permit liquidated damages only after a demand is made, and *require* a setoff for Fair Market Rental Value from the time of that demand. Wells Fargo having in fact made the demand within a reasonable time, Taca's counter-factual and speculative argument that Wells Fargo could have "delay[ed] until the last moment" – i.e., until the end of the respective lease terms between late 2003 and early 2005 – is insufficient to defeat summary judgment. *See Dister*, 859 F.2d at 1116–17.

III. *Wells Fargo's Calculation of Liquidated Damages*

Wells Fargo calculates that the unpaid rent, through the time of its demand for liquidated damages, is as follows: $3,775,691.88 each for four of the aircraft – Manufacturer's Serial Numbers ("MSN") 106, 107, 139, and 140 – and $2,817,672.00 for the fifth, MSN 142. It calculates the rent for the remainder of the lease terms, discounted to present value, to be, respectively, $4,454,752.40, $2,655,639.13, $5,240,264.00, $2,250,442.20, and $2,250.442.20. These amounts are not disputed by Taca.

■ Taca does dispute Wells Fargo's computation of the Fair Market Rental Values to be subtracted from the latter amounts, notwithstanding the fact that Wells Fargo had them determined "by an independent appraiser reasonably selected by the Lessor" in accordance with the Lease. (*Id.* §§ 1.1, at 2; 26(c), at 75.) According to Wells Fargo, those values are, respectively, $27,500 per month, $51,000 per month, $50,000 per month, $53,000 per month, and $53,500 per month for the five aircraft.

Taca first argues that, as a general matter, a trial is required and was contemplated by the parties on the issue of the Fair Market Rental Value, since the alternative measures of damages provided for, and the provision for recovery of enforcement costs and attorneys fees, present triable issues of fact requiring discovery. (D. Mem. at 16–18.) However, the Lease expressly forecloses such an interpretation of the liquidated damages clause, since it specifies (1) that the Value be *determined* by a single appraiser of Lessor's choosing, and (2) that the resulting liquidated damages *shall* be paid. (Lease Agreement §§ 1.1, 26(c).) Taca cites no authority, and the Court can think of no rationale, for the proposition that the necessity of factual discovery or a trial on the issue of other damages or other methods of computing damages negates the clear meaning of the liquidated damages provision, or somehow infects it with a material issue of disputed fact where one does not otherwise appear. To the contrary, the obvious rationale for providing for determination of the Fair Market Rental Value by a single appraiser selected by Wells Fargo is to *avoid* the necessity for lengthy contested judicial proceedings over the amount to be set off against the rent due.

■ Taca goes on to attack the substance of the appraiser's determination. (D.Mem.18–20.) These attacks however, completely disregard the fact that Taca effectively agreed to submit this determination to the final decision of the appraiser. Having agreed that the Fair Market

Rental Value was to be determined by an independent appraiser selected by Wells Fargo, Taca is bound by the determination so long as Wells Fargo indeed selected such an appraiser. Taca cites cases in which the parties devised a more elaborate procedure involving multiple appraisers (D. Mem. at 21–22), but those cases have no bearing here, where the parties expressly agreed to be bound by the single appraisal called for in these Lease Agreements. Taca provides no evidence creating an issue of fact as to whether the appraiser selected was "independent," or as to whether Wells Fargo "reasonably" selected it, as required by the Lease Agreements. Taca faults the appraisal only for certain specific assumptions and procedures used, such as the appraiser's failure to physically inspect the planes, none of which bear on the appraiser's independence or otherwise suggest noncompliance with the Lease Agreements.

## IV.  *Additional Damages*

Wells Fargo also seeks additional damages for storage, inspection, and appraisal costs, and for attorneys fees. The Lease Agreements entitle Wells Fargo to the actual amount "incurred by the Lessor (on a full indemnity basis) by reason of . . . Default or the exercise of the Lessor's remedies." (Lease Agreement § 26(f), at 77.) Taca raises no factual issues regarding the expenses Wells Fargo claims to have incurred. Its sole argument can be disposed of as a matter of law.

■■ Taca argues that "genuine issues of material fact preclude summary judgment on all of the items of actual damages" relating to Wells Fargo's costs. The only issue actually pointed to by Taca is the basis for calculating attorney fees, which Taca claims should be awarded on a *quantum meruit* basis. However, the case cited by Taca involved a retail installment contract provision that permitted the recovery of attorney fees in an amount equal to a fixed percentage (15%) of the unpaid balance. *First Nat. Bank of East Islip v. Brower,* 42 N.Y.2d 471, 473, 398 N.Y.S.2d 875, 368 N.E.2d 1240 (1977). Under such circumstances, the court required that "there be an appropriate demonstration that the quantity and quality of legal services actually rendered are such as to warrant, on a *quantum meruit* basis, that full percentage." *Id.* at 474, 398 N.Y.S.2d 875, 368 N.E.2d 1240. When, however, a contract provides for shifting of the *actual* attorneys fees expended by the prevailing party, "the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987).

■■ Here, the amounts expended by Wells Fargo are presumptively reasonable. In contracting for legal services, it had ample incentive to negotiate a favorable hourly rate and to monitor the appropriateness of the number of hours billed. *See Bleecker Charles Co. v. 350 Bleecker Street Apartment Corp.,* 212 F.Supp.2d 226, 230–31 (S.D.N.Y.2002) (citing cases holding that "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market"). In fact, Taca challenges neither quantity the rates charged nor the hours expended by Wells Fargo's attorneys. Nor does Taca raises any issue regarding the other enforcement costs claimed by Wells Fargo. Thus, there is no issue of material fact to be decided with respect to any of the enforcement costs claimed by Wells Fargo.

## V.  *Conclusion*

For the reasons stated above, Wells Fargo's motion for summary judgment on damages totaling $31,084,462.08 and attor-

neys fees and costs totaling $1,506,906.36 is granted.

SO ORDERED.